UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK,

| | |
|---|---|
| Amelia Roskin-Frazee<br><br>　　　　Plaintiff,<br><br>v.<br><br>Columbia University,<br><br>　　　　Defendant. | Civil Action No.<br><br>Judge:<br><br>**ECF CASE**<br><br>**Jury Trial Demanded** |

## COMPLAINT AND JURY DEMAND

Plaintiff, through her attorneys, submits this Complaint and states the following:

### PARTIES

1. Defendant COLUMBIA University ("COLUMBIA") is a university located in New York City, New York.

2. Plaintiff Amelia Roskin-Frazee was, at all times relevant, a student at COLUMBIA.

3. COLUMBIA receives federal financial assistance and is therefore subject to the dictates of 20 U.S.C. § 1681. ("Title IX")

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and over state law claims pursuant to 28 U.S.C. § 1367.

5. Venue in this Court is proper under 28 U.S.C. § 1391 (b) because the events giving rise to this claim took place in this judicial district, and Defendants reside in this judicial district.

### COLUMBIA's General Policy of Indifference To Sexual Misconduct

6. COLUMBIA has a history of violating Title IX when responding to reports of sexual misconduct.

1

7. In April of 2014, twenty-three students filed administrative complaints with the Department of Education's Office for Civil Rights ("OCR"), alleging that COLUMBIA violated Title IX in the way that COLUMBIA responded to each complainant's report of sexual misconduct.

8. Among the key allegations in these administrative complaints, were accusations that:
   - COLUMBIA prohibited victims of sexual misconduct from discussing their cases with anybody outside of the confines of the disciplinary process;
   - Campus counselors pressured victims not to report sexual assault or harassment;
   - Disciplinary proceedings were handled by people with no training;
   - Disciplinary proceedings unduly favor the accused over the accuser;
   - COLUMBIA failed to provide accommodations necessary to victims;
   - COLUMBIA failed to meaningfully discipline students found to have committed sexual misconduct

9. In the summer of 2014, several more students joined in the administrative complaint, accusing COLUMBIA of violating Title IX in the way it responded to each complainant's report of sexual misconduct.

10. In September of 2014, in response to the growing issue of sexual misconduct on COLUMBIA's campus, several students held a campus protest to raise awareness about COLUMBIA's failure to meaningfully address the issue of sexual misconduct on campus. Approximately fifty survivors of sexual misconduct spoke at the protest.

11. Also that month, a coalition of students and 31 student groups, sent a letter to the COLUMBIA administration outlining several ways in which its policy on sexual misconduct could be improved.

12. Also that month, COLUMBIA student Emma Sulkowicz launched her Carry That Weight project. For the project, Sulkowicz pledged to carry the mattress on which she was sexually assaulted, everywhere she went on campus until she graduated or her rapist left COLUMBIA.

13. On October 29, 2014, students across the country carried mattresses in solidarity with Carry That Weight. Students dumped 28 mattresses on COLUMBIA President Lee Bollinger's lawn, to represent the 28 Title IX complainants at COLUMBIA, and taped policy demands to his door. In response, COLUMBIA charged student groups $471 in cleanup fees.

14. In April of 2015, anti-sexual violence group No Red Tape Columbia projected "Rape Happens Here" on Low Library, COLUMBIA's administrative building, during Days on Campus. In response, COLUMBIA threatened the members involved with disciplinary action.

15. In the Spring of 2015, COLUMBIA threatened student activists and journalists with suspension or expulsion for handing out flyers to prospective students asking for better sexual violence prevention education at COLUMBIA. Two students subsequently had to attend disciplinary meetings where they were threatened with expulsion.

16. In September of 2015, COLUMBIA released the results of a survey conducted by the Association of American Universities survey that evaluated the rate of sexual violence on campus. The survey found that nearly a quarter of undergraduate women at COLUMBIA are sexually assaulted while enrolled.

17. In March of 2016, COLUMBIA's Dean of Undergraduate Student Life and sanctioning officer for COLUMBIA College sexual misconduct cases, Cristen Kromm, was quoted in a campus publication as calling the commission of a sexual assault a "mistake" and an opportunity for a perpetrator's "learning, growth, and change." Despite widespread protests regarding Kromm's comments, Kromm remains the initial sanctioning officer in charge of issuing punishments for sexual misconduct cases involving COLUMBIA College perpetrators.

18. Currently, COLUMBIA is under four separate OCR investigations for its alleged violation of Title IX in responding to reports of sexual misconduct on campus.

**COLUMBIA's Policies And Procedures For Sexual Misconduct**

19. During the time of the allegations alleged herein, COLUMBIA maintained a policy for responding to reports of sexual misconduct, called the Gender-Based Misconduct Policy and Procedures For Students (the "Policy").

20. The Policy outlined the way COLUMBIA, and its administrators, were required to respond to reports of sexual misconduct.

21. With respect to reporting sexual misconduct, the Policy required that any non-confidential employees, including professors and other administrators, report instances of sexual misconduct to the Gender-Based Misconduct Office ("Office"), either directly or via the Title IX Coordinator, regardless of whether a complainant wishes to report the incident or not.

22. Once the Office receives a report of sexual misconduct, it is required to investigate and respond to the report of sexual misconduct, unless the victim explicitly requests that no investigation take place, and that request is granted.

23. If the report also constitutes a crime, the Policy requires the Office to report it, without any identifying information, to Campus Public Safety.

24. With respect to accommodations for victims of sexual violence, the Policy states: "The Office will work with all students affected by gender-based misconduct to *ensure their safety and promote their well-being* throughout their time at the University. Sometimes this assistance will take the form of appropriate accommodations intended to support and provide relief."

25. The Policy further states that possible accommodations include, but are not limited to:
    - "Moving a student's residence;"
    - "Changing a student's academic schedule;"
    - "Allowing a student to withdraw from or retake a class without penalty," and;
    - "Providing access to tutoring or other academic support."

26. With respect to the identity of a perpetrator, the Policy states: "The University will, if

possible, investigate reports of incidents affecting University students that involve persons who are not members of the University community or whose identity is not known and take appropriate actions to protect affected students and others in the University community. In addition, the Office will assist students in identifying appropriate campus and other resources."

**Background Information Specific To Plaintiff**

27. Plaintiff enrolled at COLUMBIA during the Fall Semester of 2015.

28. Prior to the Fall Semester, Plaintiff moved in to an on-campus dormitory suite in Hartley Hall. Unlike virtually every other on-campus dormitory, the entry door to Plaintiff's room did not have an automatic locking door with key-card access. Rather, Plaintiff's room had a manual lock, accessible with a key, and the doors to the suite containing Plaintiff's room remained unlocked at all times.

29. On October 5, 2015, only months after enrolling at COLUMBIA, Plaintiff was asleep in her room. She awoke to a man on top of her, pinning her down with her face in her pillow. Her pants were down to her ankles, and the man was raping her. Plaintiff was in so much pain that she passed out. She awoke to see a man, roughly six feet tall, with short, curly hair leaving her dorm room, in only his underwear. She then passed out again.

30. Like most rape victims, Plaintiff was fearful of reporting her rape to school and law enforcement officials. Plaintiff's awareness of COLUMBIA's history of indifference to sexual assault victims also contributed to her reluctance to report. Plaintiff did contact the Women's Health department at COLUMBIA's Medical Services, in an effort to be seen for pain and injury to her genitalia. First, Plaintiff logged on to the Medical Services website to try make an appointment. The online system indicated that there were no available appointments. Plaintiff then called Medical Services and asked when the next available appointment was. She was told that she would not be given the next available appointment over the phone, and that she must continue to check the online system for

available appointments. She then asked if she could be seen as a walk-in, and that she needed treatment for women's health related issues. In response, she was told that walk-in patients cannot be seen for women's health related issues. Plaintiff then hung up.

31. Plaintiff continued to refresh the online scheduler to seek an available appointment at women's health. Exasperated by the process, Plaintiff then indicated in the online scheduler that she was seeking an appointment for flu like symptoms. When she made this change, the online system indicated there was an available appointment and Plaintiff scheduled it. While at Medical Services, she explained that she was experiencing genital pain, to which she was told, she "shouldn't have such rough sex again." No one at Medical Services attempted to probe further to see if perhaps Plaintiff had been raped and was too afraid to come forward. She then left without receiving treatment.

32. On October 13, 2015, Plaintiff called COLUMBIA's 24/7 Sexual Violence Response Hotline ("SVR"). In response to Plaintiff's report that she had been raped, the SVR representative advised Plaintiff that she could report her rape to the police, Plaintiff advised that she was concerned about reporting to the police and initiating a criminal case that would become a matter of public knowledge. The SVR representative commented that even though Plaintiff is lesbian, she should have been on birth control. Plaintiff has since learned that, at the time she called in, the SVR staff who fielded initial calls had no training in responding to victims of sexual trauma.

33. Plaintiff also requested from the SVR nurse information related to her ability to receive academic and housing accommodations under Title IX, but the SVR nurse was unaware of Title IX or any possible accommodations.

34. An hour later, Plaintiff was connected to an SVR Staff Advocate. The Staff Advocate similarly was unaware of Plaintiff's rights and options under Title IX or any ability to receive academic or housing accommodations. Specifically, Plaintiff requested the ability to change rooms, as she felt unsafe and unprotected in the dorm room in which she was raped. The Staff Advocate set up a meeting with Plaintiff for the following day.

35. On October 14, 2015, Plaintiff met with the Staff Advocate at the SVR office. At this meeting, the Staff Advocate informed Plaintiff that if she wanted to change rooms, she would have 24 hours from when Housing arbitrarily provided her with a reassignment date; she would receive no assistance from COLUMBIA; she would be charged up to $500; and COLUMBIA would need to inform her parents. Given these onerous conditions placed on Plaintiff's ability to move rooms, especially the fact that her parents would be notified, and likely have to be advised of her rape, Plaintiff was essentially forced to remain in the room in which she had been raped.

36. Again, the Staff Advocate never referred Plaintiff to the Title IX office, nor advised her of any rights or resources she may have under Title IX.

37. Later that day, Plaintiff went to the Counseling and Psychological Services ("CPS") office. Plaintiff met with a therapist at CPS, who told Plaintiff that CPS was only a temporary resource. The therapist did not inform Plaintiff of any rights or resources she may have under Title IX.

38. Plaintiff also filed paperwork with COLUMBIA's Disability Services Office ("DS") in which she indicated that she was suffering from PTSD and was seeking academic accommodations because of the distress she was under.

39. On October 14, 2015, Plaintiff reached out to her academic advisor, Kristy Barbacane. Without explicitly saying that she was raped, Plaintiff strongly alluded to Barbacane that Plaintiff had been raped. Barbacane responded that Plaintiff should take the rest of the semester off, or transfer to another university. Barbacane never informed Plaintiff about any of her rights or options under Title IX.

40. Despite being required to report Plaintiff's rape to the Gender-Based Misconduct Office, Plaintiff is informed, believes, and on that basis alleges, that Barbacane never made such a report.

41. Later, Plaintiff learned that Barbacane reported Plaintiff's rape in the form of a vague Wellness Report. The report was forwarded to Scott Helfrich from the Office of

Residential Life, who emailed Plaintiff's Residential Advisor ("RA") and asked her to do a general "wellness check" with Plaintiff. Plaintiff's RA set up a five-minute meeting with Plaintiff and asked Plaintiff about her classes. Plaintiff's RA did not tell Plaintiff about any Title IX resources. Plaintiff's RA then informed Scott Helfrich via email that Plaintiff did not say anything about her meeting with Barbacane, and the case was closed without further investigation.

42. On October 22, 2015, eight days after filing with COLUMBIA's DS, Plaintiff heard back from DS. DS informed her that for each accommodation sought, Plaintiff was required to contact DS, explain her symptoms, and seek medical attention. Additionally, DS required that Plaintiff's therapist contact DS to confirm the need for accommodations for each accommodation request. She was advised that even if she were to comply with these requests there was no assurance that her requests would be granted.

43. Given the lengthy process required by DS, Plaintiff had to take it upon herself to seek immediate academic accommodations by meeting with her professors and reliving her rape story over and over again.

44. On December 3, 2015, Plaintiff attended a meeting with Suzanne Goldberg ("Goldberg"), COLUMBIA's Executive Vice President for University Life and the administrator in charge of COLUMBIA's sexual assault policies, along with several other student advocacy organization members. During this meeting, Plaintiff shared that she had been raped, and told of the difficulties she experienced with COLUMBIA in response to her rape up to that point.

45. At no time during this meeting did Goldberg inform Plaintiff about her rights and options under Title IX, or refer her to the Title IX office. Goldberg showed no interest in her story and did not even talk to Plaintiff to seek more information.

46. Plaintiff is informed, believes and on that basis, alleges that, even though Goldberg had actual knowledge of Plaintiff's campus rape, and was required to report Plaintiff's rape to the Gender-Based Misconduct Office under Title IX, Goldberg made no such report.

47. On December 14, 2015, after COLUMBIA had actual knowledge of Plaintiff's campus rape in her dorm room, took no action to investigate Plaintiff's rape, failed to take any steps to ensure her ongoing safety, effectively denied her the ability to change dorm rooms, and effectively forced her to seek her own academic accommodations, Plaintiff was sexually assaulted again in that same dorm room.

48. On this second occasion, Plaintiff was entering her dorm room at night. As soon as she opened the door, she was pushed into her room from behind. The room was completely dark, and Plaintiff turned to run out, but her assailant pushed her down on the ground. Plaintiff froze in the moment, virtually unable to process that she was going to be victimized again. Her assailant pulled off her shorts and underwear, tied her hands above her head to her desk chair with her underwear and an iPhone charging cord, and shoved her shorts into her mouth. Her assailant then began penetrating Plaintiff with several foreign objects, including a hairbrush, a pair of scissors, and a razor. Plaintiff screamed as her assailant cut her thighs with the razor blade. Plaintiff's assailant then whispered into Plaintiff's ear, "Still a dyke?" as he penetrated her again with a pair of scissors.

49. Her assailant then left the room, leaving Plaintiff tied up and naked.

50. The next day, Plaintiff went to St. Luke's Hospital to seek treatment for her injuries. There, it was confirmed that Plaintiff suffered vaginal tearing, cuts to her wrists and thighs, and several bruises on her legs. Later, as a result of Plaintiff's sexual assault, she was diagnosed with bilateral wrist sprains.

51. On January 19, 2016 Plaintiff received a call from Adrienne Blount, a case manager at COLUMBIA's Student Conduct and Community Standards ("SCCS") office. Blount informed Plaintiff that her office had been contacted by a COLUMBIA employee who had a duty to report sexual misconduct under the Policy. This employee stated that based on an anonymous survey completed by Plaintiff in which Plaintiff described her rape and sexual assault, the employee had reason to suspect that Plaintiff was the anonymous author of the survey.

52. Based on her prior experiences with COLUMBIA administrators, her lack of trust that COLUMBIA would actually take any remedial action, and that she would again be left to her own to seek further living and academic accommodations, Plaintiff informed Blount that she did not wish to "officially" report her sexual assaults.

53. Meanwhile, Plaintiff's assailant continued to harass her in her dorm. Plaintiff's dormitory hall had a public bulletin board that was often used for public announcements. On February 10, 2016, someone had posted a note on the public bulletin board that read, "Isn't it fun to wake up to someone fucking you?"

54. Then on February 16, 2016, in the same handwriting, another note was posted on the public bulletin board that read, "I'll buy you a new phone charger," an obvious reference to the phone charging cable used by Plaintiff's assailant to tie her hands during her second sexual assault.

55. On August 5, 2016, after the further sexual harassment, Plaintiff did "formally" report her sexual assaults to SCCS.

56. On August 8, 2016, Plaintiff received a letter from Jeri Henry, Associate Vice President of SCCS, informing Plaintiff that COLUMBIA would not investigate her report unless she was able to identify her assailant. This was in direct violation of COLUMBIA's stated policy at the time.

57. Plaintiff sent an angry e-mail to Henry in response, and requested that COLUMBIA initiate an investigation.

58. COLUMBIA officially opened an investigation on September 8, 2016.

59. That same day, Plaintiff met with Serena Barnett and Ben Marzolf, the two employees responsible for investigating Plaintiff's reports. In this meeting, Plaintiff explicitly requested that certain safety measures be implemented, including the installation of security cameras in and around her dormitory.

60. On September 9, 2016, Plaintiff e-mailed Ms. Barnett and also requested that locks be installed on her suite door.

61. On September 12, 2016, Ms. Barnett responded that Plaintiff would need to contact other COLUMBIA agencies in order to secure the safety measures she had requested.

62. On September 14, 2016, Plaintiff met with Henry and Deidre Fuchs, a representative of Columbia's Office of Public Safety.  During the meeting, Henry asked Plaintiff if Plaintiff still even wanted to be a student at COLUMBIA given her public writings criticizing COLUMBIA, and "how [Plaintiff] interacts with the COLUMBIA community."

63. On September 16, 2016, for the first time since her initial rape in October of 2015, Plaintiff was offered the choice of moving to an off-campus apartment, or to have COLUMBIA install a lock on her suite door.  Plaintiff chose to have the lock installed on her suite door.

64. On October 7, 2016, Plaintiff received notice from Barnett and Henry that COLUMBIA had completed its investigation into Plaintiff's reports of sexual violence after only 26 days.  Plaintiff was told that as part of the "investigation," the investigators had not interviewed anybody, did not review the swipe logs for her dormitory building for the nights of her respective sexual assaults, and could not review any security camera footage because the footage had been erased due to the length of time that had passed since Plaintiff's assaults.  Plaintiff was also informed that had COLUMBIA initiated an investigation at the time of her assaults, the security camera footage would have been available to the investigators.

65. On October 17, 2016, Plaintiff received the official investigation report from COLUMBIA.  In response, Plaintiff sent an e-mail to Barnett criticizing COLUMBIA'S investigation.

66. On October 18, 2016, the United States Department of Education's Office for Civil Rights initiated an investigation into COLUMBIA for the way that they responded to Plaintiff's reports of rape and sexual assault.

67. On December 5, 2016, Plaintiff again requested housing accommodations for the 2017-

2018 academic school year. Plaintiff was told that she would have to go through an extensive application process and petition to a panel who would determine if she would receive a housing accommodation. On December 9, 2016, Plaintiff was finally granted a housing accommodation.

68. As a result of the University's response, and lack of response to Plaintiff's reports that she was raped and sexually assaulted, Plaintiff has suffered psychological and emotional damages, and has experienced a loss of educational opportunities and/or benefits, including but not limited to:

- Suffering a noticeable drop in her grades;
- Being forced to miss assignments, and seek extensions and other academic accommodations as a result;
- Was forced to take an incomplete for one of her courses
- Being forced to out herself as a rape victim to many of her professors in order to receive accommodations;
- A significant amount of absences from her classes;
- Avoidance of on-campus activities and/or events, especially Columbia Queer Alliance meetings and other events for LGBTQ students;
- Avoidance of common spaces, especially the hallway between Plaintiff's dorm room and nearest bathroom, and all floor events taking place in those common spaces;
- A significant reduction in the enjoyment of her academic experience at the University.

**COLUMBIA'S Violation Of It's Own Policies**

69. COLUMBIA violated several of its own policies in its response to Plaintiff's reports that she was raped and sexually assaulted. Specifically:

- Despite the requirement that non-confidential employees report sexual misconduct to the Gender-Based Misconduct Office, neither Barbacane nor

      Goldberg reported Plaintiff's incidents of sexual assault and rape;

- COLUMBIA did not initiate an investigation until September 8, 2016, almost one year after first receiving notice of Plaintiff's initial rape;

- Plaintiff is informed, believes, and on that basis alleges, that COLUMBIA did not report Plaintiff's sexual assaults to Campus Public Safety;

- COLUMBIA failed to work with Plaintiff to "ensure [her] safety and promote [her] well-being" after learning of her incidents of sexual assault; and

- COLUMBIA failed to provide reasonable housing and academic accommodations, and/or made it so onerous for Plaintiff to secure accommodations, that it made it practically impossible for Plaintiff to in fact secure necessary accommodations.

**The Department of Education Guidance Documents**

70. The Office for Civil Rights ("OCR"), a division of the United States Department of Education ("DOE"), is responsible for the implementation, interpretation, and enforcement of Title IX.

71. The OCR has promulgated numerous documents outlining the requirements for an educational institution to be in compliance with Title IX, including the Dear Colleague Letter of April 4th, 2011 ("DCL"), which specifically concerns peer-on-peer sexual harassment and sexual assault. The DCL is attached to this Complaint as Exhibit A. In 2014, the OCR published Questions and Answers on Title IX and Sexual Violence ("Questions and Answers"). Questions and Answers is attached to this Complaint as Exhibit B.

72. The DOE was authorized by Congress to promulgate regulations to govern the implementation, interpretation and enforcement of Title IX.

73. The DCL and Questions and Answers are "significant guidance documents," intended to provide educational institutions with clarity as to the requirements they must follow in order to be in compliance with the DOE. Pursuant to 72 Fed. Reg. 3432, a "guidance

13

document" is "an agency statement of general applicability and future effect, other than a regulatory action…that sets forth a policy on a statutory, regulatory, or technical issue or an interpretation of a statutory or regulatory issue."  A "significant guidance document" is "a guidance document disseminated to regulated entities or the general public that may reasonably be anticipated to… (iv) Raise novel legal or policy issues arising out of legal mandates, the President's priorities, or the principles set forth in Executive Order 12866, as further amended."

74. The DCL specifically outlines the requirements that educational institutions must follow regarding peer-on-peer sexual harassment and assault.  Failure to adhere to these guidelines could result in an educational institution to be sanctioned by the OCR, up to and including the complete withdrawal of all federal funding.  Questions and Answers expands on the guidelines promulgated in the DCL.

75. In its response to Plaintiff's reports of rape and sexual assault, COLUMBIA violated the DCL and Questions and Answers in several ways, including, but not limited to, by:

- Failing to promptly and equitably investigate Plaintiff's reports;
- Failing to take any interim measures to ensure Plaintiff's safety on campus; and
- Failing to provide reasonable housing and/or academic accommodations to Plaintiff.

**FIRST CAUSE OF ACTION**
**Discrimination Under Title IX: Sexually Hostile Culture**
**(Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a))**

76. Plaintiff incorporates the allegations of the preceding paragraphs herein.

77. COLUMBIA actively created and was deliberately indifferent to a culture of sexual hostility and violence within its institution by instituting several de-facto policies and permitting practices that included but are not limited to:

- Little to no meaningful discipline of students who committed acts of sexual misconduct;
- Interference with female students' access to Title IX resources;

- Not reporting incidents of sexual misconduct to the appropriate campus offices;
- Failing to provide accommodations to female victims of sexual misconduct;

78. COLUMBIA's sexually hostile policies and practices were a proximate cause of Plaintiff being subjected to sexual harassment in the form of 1) multiple sexual assaults by another COLUMBIA student, 2) a hostile educational environment, and 3) ongoing harassment by forcing her to be vulnerable to additional harassment by her assailant and his associates, including several instances of actual, subsequent harassment.

79. COLUMBIA's indifferent policies and practices amounted to an intentional violation of Title IX.

80. The sexual harassment that Plaintiff suffered was so severe, pervasive, and objectively offensive that it effectively barred her access to educational opportunities and benefits.

81. As a direct and proximate result of COLUMBIA's creation of and deliberate indifference to its sexually hostile educational environment, Plaintiff suffered damages and injuries for which COLUMBIA is liable.

## SECOND CAUSE OF ACTION
### Gender Discrimination Under Title IX
### Deliberate Indifference To Plaintiff's Multiple Sexual Assaults

82. Plaintiff incorporates the allegations of the preceding paragraphs herein.

83. COLUMBIA received actual notice of Plaintiff's rape as early as October 14, 2015 but no later than December 3, 2015.

84. COLUMBIA deliberately chose to delay almost a year before initiating an investigation into Plaintiff's reports of multiple sexual assaults.

85. COLUMBIA also failed to provide reasonable accommodations to Plaintiff.

86. COLUMBIA's failure to initiate a timely investigation and failure to provide reasonable accommodations was clearly unreasonable and amounted to deliberate indifference to Plaintiff's sexual assaults.

87. COLUMBIA's failure to comply with its own policies, as well as its significant departure

15

from the DCL, Questions and Answers, and other federal guidance, in its response to Plaintiff's report of multiple sexual assaults was clearly unreasonable and amounted to deliberate indifference to Plaintiff's sexual assaults.

88. COLUMBIA's deliberate indifference to Plaintiff's initial rape exposed her to continued sexual harassment, including being sexually assaulted again, which was so severe, pervasive, and objectively offensive that it effectively barred her access to meaningful educational opportunities and benefits including academics, and on campus events and activities.

89. As a direct and proximate result of COLUMBIA's deliberate indifference to Plaintiff's rape, Plaintiff suffered damages and injuries for which COLUMBIA is liable.

## THIRD CAUSE OF ACTION
### Negligence – Failure To Respond To First Rape of Plaintiff

90. Plaintiff incorporates the allegations of the preceding paragraphs herein.

91. COLUMBIA owed a duty of care to protect Plaintiff from a known risk of harm.

92. COLUMBIA was specifically on notice that Plaintiff had been raped in her dorm room, by another COLUMBIA student prior to Plaintiff's second sexual assault, in her dorm room.

93. COLUMBIA breached its duty by failing to investigate Plaintiff's first rape, failing to take reasonable protective measures, such as installing locks on Plaintiff's dorm suite door, leaving Plaintiff's assailant to repeat his behavior upon Plaintiff and potentially other unsuspecting COLUMBIA students.

94. As a direct and proximate result of COLUMBIA's breach of its duty, Plaintiff was sexually assaulted in her dorm room, on-campus.

95. As a direct and proximate result, Plaintiff suffered damages and injuries for which COLUMBIA is liable under state law.

## FOURTH CAUSE OF ACTION
### Negligence – Premises Liability

96. Plaintiff incorporates the allegations of the preceding paragraphs herein.

97. As Plaintiff's landlord, COLUMBIA owed a duty to take precautions to protect Plaintiff, its tenant, from foreseeable harm.

98. It was foreseeable that Plaintiff, who was raped in her on-campus dorm room by another COLUMBIA student, would be sexually assaulted again if reasonable precautions were not implemented.

99. COLUMBIA breached its duty by failing to take any measures whatsoever to protect Plaintiff from the foreseeable harm that she would be sexually assaulted again, and by actively preventing Plaintiff from taking steps to protect herself.

100. As a direct and proximate cause of COLUMBIA's breach of its duty, Plaintiff was sexually assaulted in her on-campus dorm room.

101. As a direct and proximate result, Plaintiff suffered damages and injuries for which COLUMBIA is liable under state law.

## FIFTH CAUSE OF ACTION
### Gross Negligence

102. Plaintiff incorporates the allegations of the preceding paragraphs herein.

103. COLUMBIA was grossly negligent in failing to take any steps to protect Plaintiff despite the obvious danger that Plaintiff would be sexually assaulted again, due to the fact that she had experienced a prior rape in her on-campus dorm.

104. By failing to take any steps to protect Plaintiff, and by actively preventing Plaintiff from protecting herself, COLUMBIA failed to exercise even slight care, which amounted to a reckless indifference to Plaintiff's rights.

105. COLUMBIA well knew that by the above grossly negligent conduct, COLUMBIA was unreasonably exposing Plaintiff to the obvious danger of being sexually assaulted in her dorm again.

106. As a direct and proximate result, Plaintiff suffered damages and injuries for which COLUMBIA is liable under state law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks a judgment against COLUMBIA as follows:

A. An award of damages in an amount to be established at trial, including, without limitation, payment of Plaintiff's expenses incurred as a consequence of the sexual assault; damages for deprivation of equal access to the educational benefits and opportunities provided by COLUMBIA; and damages for past, present, and future emotional and physical pain and suffering, ongoing and severe mental anguish, and loss of past, present, and future enjoyment of life as a result of being raped;

B. An award of pre- and post-judgment interest;

C. An award of costs and attorney fees, pursuant to 42 U.S.C. § 1988(b);

D. Punitive Damages; and

E. Such other relief as is proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY OF ALL ISSUES SO TRIABLE.**


By her Attorneys,

*/s/ ROBERT HANTMAN*
Robert Hantman (2066538)
Hantman & Associates
1120 Avenue of Americas 4th Fl.
New York, NY 10036
Tel: 212- 684-3933
Email: rhantman@hantmanlaw.com

*/s/ IRWIN M. ZALKIN*
Irwin M. Zalkin (797283 - Admission Request Forthcoming)
Devin M. Storey (4640769 - Admission Request Forthcoming)
The Zalkin Law Firm, P.C.
12555 High Bluff Drive, Suite 301
San Diego, CA 92130
Tel: 858-259-3011
Email: irwin@zalkin.com
           dms@zalkin.com