

**UNITED STATES DEPARTMENT OF EDUCATION**

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

### Questions and Answers on Title IX and Sexual Violence[1]

Title IX of the Education Amendments of 1972 ("Title IX")[2] is a federal civil rights law that prohibits discrimination on the basis of sex in federally funded education programs and activities. All public and private elementary and secondary schools, school districts, colleges, and universities receiving any federal financial assistance (hereinafter "schools", "recipients", or "recipient institutions") must comply with Title IX.[3]

On April 4, 2011, the Office for Civil Rights (OCR) in the U.S. Department of Education issued a Dear Colleague Letter on student-on-student sexual harassment and sexual violence ("DCL").[4] The DCL explains a school's responsibility to respond promptly and effectively to sexual violence against students in accordance with the requirements of Title IX.[5] Specifically, the DCL:

- Provides guidance on the unique concerns that arise in sexual violence cases, such as a school's independent responsibility under Title IX to investigate (apart from any separate criminal investigation by local police)  and address sexual violence.

---

[1] The Department has determined that this document is a "significant guidance document" under the Office of Management and Budget's Final Bulletin for Agency Good Guidance Practices, 72 Fed. Reg. 3432 (Jan. 25, 2007), *available at* www.whitehouse.gov/sites/default/files/omb/fedreg/2007/012507_good_guidance.pdf. The Office for Civil Rights (OCR) issues this and other policy guidance to provide recipients with information to assist them in meeting their obligations, and to provide members of the public with information about their rights, under the civil rights laws and implementing regulations that we enforce. OCR's legal authority is based on those laws and regulations. This guidance does not add requirements to applicable law, but provides information and examples to inform recipients about how OCR evaluates whether covered entities are complying with their legal obligations. If you are interested in commenting on this guidance, please send an e-mail with your comments to OCR@ed.gov, or write to the following address: Office for Civil Rights, U.S. Department of Education, 400 Maryland Avenue, SW, Washington, D.C. 20202.

[2] 20 U.S.C. § 1681 *et seq.*

[3] Throughout this document the term "schools" refers to recipients of federal financial assistance that operate educational programs or activities. For Title IX purposes, at the elementary and secondary school level, the recipient generally is the school district; and at the postsecondary level, the recipient is the individual institution of higher education. An educational institution that is controlled by a religious organization is exempt from Title IX to the extent that the law's requirements conflict with the organization's religious tenets. 20 U.S.C. § 1681(a)(3); 34 C.F.R. § 106.12(a). For application of this provision to a specific institution, please contact the appropriate OCR regional office.

[4] Available at http://www.ed.gov/ocr/letters/colleague-201104.html.

[5] Although this document and the DCL focus on sexual violence, the legal principles generally also apply to other forms of sexual harassment.

- Provides guidance and examples about key Title IX requirements and how they relate to sexual violence, such as the requirements to publish a policy against sex discrimination, designate a Title IX coordinator, and adopt and publish grievance procedures.

- Discusses proactive efforts schools can take to prevent sexual violence.

- Discusses the interplay between Title IX, the Family Educational Rights and Privacy Act ("FERPA"),[6] and the Jeanne Clery Disclosure of Campus Security and Campus Crime Statistics Act ("Clery Act")[7] as it relates to a complainant's right to know the outcome of his or her complaint, including relevant sanctions imposed on the perpetrator.

- Provides examples of remedies and enforcement strategies that schools and OCR may use to respond to sexual violence.

The DCL supplements OCR's *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties*, issued in 2001 (*2001 Guidance*).[8] The *2001 Guidance* discusses in detail the Title IX requirements related to sexual harassment of students by school employees, other students, or third parties. The DCL and the *2001 Guidance* remain in full force and we recommend reading these Questions and Answers in conjunction with these documents.

In responding to requests for technical assistance, OCR has determined that elementary and secondary schools and postsecondary institutions would benefit from additional guidance concerning their obligations under Title IX to address sexual violence as a form of sexual harassment. The following questions and answers further clarify the legal requirements and guidance articulated in the DCL and the *2001 Guidance* and include examples of proactive efforts schools can take to prevent sexual violence and remedies schools may use to end such conduct, prevent its recurrence, and address its effects. In order to gain a complete understanding of these legal requirements and recommendations, this document should be read in full.

Authorized by

  /s/

Catherine E. Lhamon                              April 29, 2014
Assistant Secretary for Civil Rights

---

[6] 20 U.S.C. §1232g; 34 C.F.R. Part 99.
[7] 20 U.S.C. §1092(f).
[8] Available at http://www.ed.gov/ocr/docs/shguide.html.

## Notice of Language Assistance
## Questions and Answers on Title IX and Sexual Violence

**Notice of Language Assistance:** If you have difficulty understanding English, you may, free of charge, request language assistance services for this Department information by calling 1-800-USA-LEARN (1-800-872-5327) (TTY: 1-800-877-8339), or email us at: Ed.Language.Assistance@ed.gov.

**Aviso a personas con dominio limitado del idioma inglés:** Si usted tiene alguna dificultad en entender el idioma inglés, puede, sin costo alguno, solicitar asistencia lingüística con respecto a esta información llamando al 1-800-USA-LEARN (1-800-872-5327) (TTY: 1-800-877-8339), o envíe un mensaje de correo electrónico a: Ed.Language.Assistance@ed.gov.

**給英語能力有限人士的通知:** 如果您不懂英語，或者使用英语有困难，您可以要求獲得向大眾提供的語言協助服務，幫助您理解教育部資訊。這些語言協助服務均可免費提供。如果您需要有關口譯或筆譯服務的詳細資訊，請致電 1-800-USA-LEARN (1-800-872-5327) (聽語障人士專線：1-800-877-8339),或電郵: Ed.Language.Assistance@ed.gov.。

**Thông báo dành cho những người có khả năng Anh ngữ hạn chế:** Nếu quý vị gặp khó khăn trong việc hiểu Anh ngữ thì quý vị có thể yêu cầu các dịch vụ hỗ trợ ngôn ngữ cho các tin tức của Bộ dành cho công chúng. Các dịch vụ hỗ trợ ngôn ngữ này đều miễn phí. Nếu quý vị muốn biết thêm chi tiết về các dịch vụ phiên dịch hay thông dịch, xin vui lòng gọi số 1-800-USA-LEARN (1-800-872-5327) (TTY: 1-800-877-8339), hoặc email: Ed.Language.Assistance@ed.gov.

**영어 미숙자를 위한 공고:** 영어를 이해하는 데 어려움이 있으신 경우, 교육부 정보 센터에 일반인 대상 언어 지원 서비스를 요청하실 수 있습니다. 이러한 언어 지원 서비스는 무료로 제공됩니다. 통역이나 번역 서비스에 대해 자세한 정보가 필요하신 경우, 전화번호 1-800-USA-LEARN (1-800-872-5327) 또는 청각 장애인용 전화번호 1-800-877-8339 또는 이메일주소 Ed.Language.Assistance@ed.gov 으로 연락하시기 바랍니다.

**Paunawa sa mga Taong Limitado ang Kaalaman sa English:** Kung nahihirapan kayong makaintindi ng English, maaari kayong humingi ng tulong ukol dito sa inpormasyon ng Kagawaran mula sa nagbibigay ng serbisyo na pagtulong kaugnay ng wika. Ang serbisyo na pagtulong kaugnay ng wika ay libre. Kung kailangan ninyo ng dagdag na impormasyon tungkol sa mga serbisyo kaugnay ng pagpapaliwanag o pagsasalin, mangyari lamang tumawag sa 1-800-USA-LEARN (1-800-872-5327) (TTY: 1-800-877-8339), o mag-email sa: Ed.Language.Assistance@ed.gov.

**Уведомление для лиц с ограниченным знанием английского языка:** Если вы испытываете трудности в понимании английского языка, вы можете попросить, чтобы вам предоставили перевод информации, которую Министерство Образования доводит до всеобщего сведения. Этот перевод предоставляется бесплатно. Если вы хотите получить более подробную информацию об услугах устного и письменного перевода, звоните по телефону 1-800-USA-LEARN (1-800-872-5327) (служба для слабослышащих: 1-800-877-8339), или отправьте сообщение по адресу: Ed.Language.Assistance@ed.gov.

**TABLE OF CONTENTS**

**Notice of Language Assistance** ...................................................................................................iii

**A. A School's Obligation to Respond to Sexual Violence** ..................................................... 1

    A-1.   What is sexual violence?................................................................................ 1

    A-2.   How does Title IX apply to student-on-student sexual violence? ....................................... 1

    A-3.   How does OCR determine if a hostile environment has been created? ............................ 1

    A-4.   When does OCR consider a school to have notice of student-on-student sexual violence? ........................................................................................................... 2

    A-5.   What are a school's basic responsibilities to address student-on-student sexual violence? ........................................................................................................... 2

    A-6.   Does Title IX cover employee-on-student sexual violence, such as sexual abuse of children? .......................................................................................................... 3

**B. Students Protected by Title IX** ........................................................................................ 5

    B-1.   Does Title IX protect all students from sexual violence?...................................... 5

    B-2.   How should a school handle sexual violence complaints in which the complainant and the alleged perpetrator are members of the same sex?................................... 5

    B-3.   What issues may arise with respect to students with disabilities who experience sexual violence? ........................................................................................... 6

    B-4.   What issues arise with respect to international students and undocumented students who experience sexual violence? ......................................................... 7

    B-5.   How should a school respond to sexual violence when the alleged perpetrator is not affiliated with the school? ........................................................................ 9

**C. Title IX Procedural Requirements** ................................................................................... 9

    C-1.   What procedures must a school have in place to prevent sexual violence and resolve complaints? ....................................................................................... 9

    C-2.   What information must be included in a school's notice of nondiscrimination? ............. 10

    C-3.   What are a Title IX coordinator's responsibilities?............................................. 10

    C-4.   Are there any employees who should not serve as the Title IX coordinator? .................. 11

    C-5.   Under Title IX, what elements should be included in a school's procedures for responding to complaints of sexual violence?.................................................. 12

    C-6.   Is a school required to use separate grievance procedures for sexual violence complaints?.................................................................................................. 14

**D. Responsible Employees and Reporting** ......................................................................**14**

    D-1.  Which school employees are obligated to report incidents of possible sexual violence to school officials? .................................................................. 14

    D-2.  Who is a "responsible employee"?.................................................................. 15

    D-3.  What information is a responsible employee obligated to report about an incident of possible student-on-student sexual violence?.................................................. 16

    D-4.  What should a responsible employee tell a student who discloses an incident of sexual violence? ................................................................................................ 16

    D-5.  If a student informs a resident assistant/advisor (RA) that he or she was subjected to sexual violence by a fellow student, is the RA obligated under Title IX to report the incident to school officials? ............................................................................ 17

**E. Confidentiality and a School's Obligation to Respond to Sexual Violence** ............................**18**

    E-1.  How should a school respond to a student's request that his or her name not be disclosed to the alleged perpetrator or that no investigation or disciplinary action be pursued to address the alleged sexual violence? ........................................ 18

    E-2.  What factors should a school consider in weighing a student's request for confidentiality? ................................................................................................ 21

    E-3.  What are the reporting responsibilities of school employees who provide or support the provision of counseling, advocacy, health, mental health, or sexual assault-related services to students who have experienced sexual violence? .................. 22

    E-4.  Is a school required to investigate information regarding sexual violence incidents shared by survivors during public awareness events, such as "Take Back the Night"? ............................................................................................................ 24

**F. Investigations and Hearings** ....................................................................................**24**

    F-1.  What elements should a school's Title IX investigation include?....................... 24

    F-2.  What are the key differences between a school's Title IX investigation into allegations of sexual violence and a criminal investigation?............................................. 27

    F-3.  How should a school proceed when campus or local law enforcement agencies are conducting a criminal investigation while the school is conducting a parallel Title IX investigation?..................................................................................................... 28

    F-4.  Is a school required to process complaints of alleged sexual violence that occurred off campus?......................................................................................................... 29

    F-5.  Must a school allow or require the parties to be present during an entire hearing?........ 30

F-6.   May every witness at the hearing, including the parties, be cross-examined? .................31

F-7.   May the complainant's sexual history be introduced at hearings? ...................................31

F-8.   What stages of the investigation are included in the 60-day timeframe referenced in the DCL as the length for a typical investigation? ........................................................31

**G.   Interim Measures ......................................................................................................................32**

G-1.   Is a school required to take any interim measures before the completion of its investigation?..................................................................................................................32

G-2.   How should a school determine what interim measures to take? ....................................33

G-3.   If a school provides all students with access to counseling on a fee basis, does that suffice for providing counseling as an interim measure?...................................................33

**H.   Remedies and Notice of Outcome ..........................................................................................34**

H-1.   What remedies should a school consider in a case of student-on-student sexual violence? ..........................................................................................................................34

H-2.   If, after an investigation, a school finds the alleged perpetrator responsible and determines that, as part of the remedies for the complainant, it must separate the complainant and perpetrator, how should the school accomplish this if both students share the same major and there are limited course options? ...........................36

H-3.   What information must be provided to the complainant in the notice of the outcome? .......................................................................................................................36

**I.   Appeals ......................................................................................................................................37**

I-1.   What are the requirements for an appeals process?........................................................37

I-2.   Must an appeal be available to a complainant who receives a favorable finding but does not believe a sanction that directly relates to him or her was sufficient? ...............38

**J.   Title IX Training, Education and Prevention .........................................................................38**

J-1.   What type of training on Title IX and sexual violence should a school provide to its employees?.......................................................................................................................38

J-2.   How should a school train responsible employees to report incidents of possible sexual harassment or sexual violence? ...........................................................................39

J-3.   What type of training should a school provide to employees who are involved in implementing the school's grievance procedures?...........................................................40

J-4.   What type of training on sexual violence should a school provide to its students?..........41

**K.   Retaliation** ................................................................................................**42**

   K-1.   Does Title IX protect against retaliation? ........................................... 42

**L.   First Amendment** .........................................................................................**43**

   L-1.   How should a school handle its obligation to respond to sexual harassment and sexual violence while still respecting free-speech rights guaranteed by the Constitution? ........................................................................................... 43

**M.   The Clery Act and the Violence Against Women Reauthorization Act of 2013** ......................**44**

   M-1.   How does the Clery Act affect the Title IX obligations of institutions of higher education that participate in the federal student financial aid programs? ...................... 44

   M-2.   Were a school's obligations under Title IX and the DCL altered in any way by the Violence Against Women Reauthorization Act of 2013, Pub. L. No. 113-4, including Section 304 of that Act, which amends the Clery Act? ........................................... 44

**N.   Further Federal Guidance** ..............................................................................**45**

   N-1.   Whom should I contact if I have additional questions about the DCL or OCR's other Title IX guidance? ......................................................................................... 45

   N-2.   Are there other resources available to assist a school in complying with Title IX and preventing and responding to sexual violence? ................................................ 45

A.   **A School's Obligation to Respond to Sexual Violence**

**A-1.  What is sexual violence?**

**Answer:**  Sexual violence, as that term is used in this document and prior OCR guidance, refers to physical sexual acts perpetrated against a person's will or where a person is incapable of giving consent (*e.g.*, due to the student's age or use of drugs or alcohol, or because an intellectual or other disability prevents the student from having the capacity to give consent). A number of different acts fall into the category of sexual violence, including rape, sexual assault, sexual battery, sexual abuse, and sexual coercion. Sexual violence can be carried out by school employees, other students, or third parties. All such acts of sexual violence are forms of sex discrimination prohibited by Title IX.

**A-2.  How does Title IX apply to student-on-student sexual violence?**

**Answer:**  Under Title IX, federally funded schools must ensure that students of all ages are not denied or limited in their ability to participate in or benefit from the school's educational programs or activities on the basis of sex. A school violates a student's rights under Title IX regarding student-on-student sexual violence when the following conditions are met: (1) the alleged conduct is sufficiently serious to limit or deny a student's ability to participate in or benefit from the school's educational program, *i.e.* creates a hostile environment; and (2) the school, upon notice, fails to take prompt and effective steps reasonably calculated to end the sexual violence, eliminate the hostile environment, prevent its recurrence, and, as appropriate, remedy its effects.[9]

**A-3.  How does OCR determine if a hostile environment has been created?**

**Answer:**  As discussed more fully in OCR's *2001 Guidance*, OCR considers a variety of related factors to determine if a hostile environment has been created; and also considers the conduct in question from both a subjective and an objective perspective. Specifically, OCR's standards require that the conduct be evaluated from the perspective of a reasonable person in the alleged victim's position, considering all the circumstances. The more severe the conduct, the less need there is to show a repetitive series of incidents to prove a hostile environment, particularly if the conduct is physical. Indeed, a single or isolated incident of sexual violence may create a hostile environment.

_____

[9] This is the standard for administrative enforcement of Title IX and in court cases where plaintiffs are seeking injunctive relief. *See 2001 Guidance* at ii-v, 12-13.  The standard in private lawsuits for monetary damages is actual knowledge and deliberate indifference. *See Davis v. Monroe Cnty Bd. of Educ.*, 526 U.S. 629, 643 (1999).

**A-4.   When does OCR consider a school to have notice of student-on-student sexual violence?**

**Answer:**  OCR deems a school to have notice of student-on-student sexual violence if a responsible employee knew, or in the exercise of reasonable care should have known, about the sexual violence. See question D-2 regarding who is a responsible employee.

A school can receive notice of sexual violence in many different ways. Some examples of notice include: a student may have filed a grievance with or otherwise informed the school's Title IX coordinator; a student, parent, friend, or other individual may have reported an incident to a teacher, principal, campus law enforcement, staff in the office of student affairs, or other responsible employee; or a teacher or dean may have witnessed the sexual violence.

The school may also receive notice about sexual violence in an indirect manner, from sources such as a member of the local community, social networking sites, or the media. In some situations, if the school knows of incidents of sexual violence, the exercise of reasonable care should trigger an investigation that would lead to the discovery of additional incidents. For example, if school officials receive a credible report that a student has perpetrated several acts of sexual violence against different students, that pattern of conduct should trigger an inquiry as to whether other students have been subjected to sexual violence by that student. In other cases, the pervasiveness of the sexual violence may be widespread, openly practiced, or well-known among students or employees. In those cases, OCR may conclude that the school should have known of the hostile environment. In other words, if the school would have found out about the sexual violence had it made a proper inquiry, knowledge of the sexual violence will be imputed to the school even if the school failed to make an inquiry. A school's failure to take prompt and effective corrective action in such cases (as described in questions G-1 to G-3 and H-1 to H-3) would violate Title IX even if the student did not use the school's grievance procedures or otherwise inform the school of the sexual violence.

**A-5.   What are a school's basic responsibilities to address student-on-student sexual violence?**

**Answer:**  When a school knows or reasonably should know of possible sexual violence, it must take immediate and appropriate steps to investigate or otherwise determine what occurred (subject to the confidentiality provisions discussed in Section E). If an investigation reveals that sexual violence created a hostile environment, the school must then take prompt and effective steps reasonably calculated to end the sexual violence, eliminate the hostile environment, prevent its recurrence, and, as appropriate, remedy its

effects. But a school should not wait to take steps to protect its students until students have already been deprived of educational opportunities.

Title IX requires a school to protect the complainant and ensure his or her safety as necessary, including taking interim steps before the final outcome of any investigation.[10] The school should take these steps promptly once it has notice of a sexual violence allegation and should provide the complainant with periodic updates on the status of the investigation. If the school determines that the sexual violence occurred, the school must continue to take these steps to protect the complainant and ensure his or her safety, as necessary. The school should also ensure that the complainant is aware of any available resources, such as victim advocacy, housing assistance, academic support, counseling, disability services, health and mental health services, and legal assistance, and the right to report a crime to campus or local law enforcement. For additional information on interim measures, see questions G-1 to G-3.

If a school delays responding to allegations of sexual violence or responds inappropriately, the school's own inaction may subject the student to a hostile environment. If it does, the school will also be required to remedy the effects of the sexual violence that could reasonably have been prevented had the school responded promptly and appropriately. For example, if a school's ignoring of a student's complaints of sexual assault by a fellow student results in the complaining student having to remain in classes with the other student for several weeks and the complaining student's grades suffer because he or she was unable to concentrate in these classes, the school may need to permit the complaining student to retake the classes without an academic or financial penalty (in addition to any other remedies) in order to address the effects of the sexual violence.

### A-6. Does Title IX cover employee-on-student sexual violence, such as sexual abuse of children?

**Answer:** Yes. Although this document and the DCL focus on student-on-student sexual violence, Title IX also protects students from other forms of sexual harassment (including sexual violence and sexual abuse), such as sexual harassment carried out by school employees. Sexual harassment by school employees can include unwelcome sexual advances; requests for sexual favors; and other verbal, nonverbal, or physical conduct of a sexual nature, including but not limited to sexual activity. Title IX's prohibition against

---

[10] Throughout this document, unless otherwise noted, the term "complainant" refers to the student who allegedly experienced the sexual violence.

sexual harassment generally does not extend to legitimate nonsexual touching or other nonsexual conduct. But in some circumstances, nonsexual conduct may take on sexual connotations and rise to the level of sexual harassment. For example, a teacher repeatedly hugging and putting his or her arms around students under inappropriate circumstances could create a hostile environment. Early signs of inappropriate behavior with a child can be the key to identifying and preventing sexual abuse by school personnel.

A school's Title IX obligations regarding sexual harassment by employees can, in some instances, be greater than those described in this document and the DCL. Recipients should refer to OCR's *2001 Guidance* for further information about Title IX obligations regarding harassment of students by school employees. In addition, many state and local laws have mandatory reporting requirements for schools working with minors. Recipients should be careful to satisfy their state and local legal obligations in addition to their Title IX obligations, including training to ensure that school employees are aware of their obligations under such state and local laws and the consequences for failing to satisfy those obligations.

With respect to sexual activity in particular, OCR will always view as unwelcome and nonconsensual sexual activity between an adult school employee and an elementary school student or any student below the legal age of consent in his or her state. In cases involving a student who meets the legal age of consent in his or her state, there will still be a strong presumption that sexual activity between an adult school employee and a student is unwelcome and nonconsensual. When a school is on notice that a school employee has sexually harassed a student, it is responsible for taking prompt and effective steps reasonably calculated to end the sexual harassment, eliminate the hostile environment, prevent its recurrence, and remedy its effects. Indeed, even if a school was not on notice, the school is nonetheless responsible for remedying any effects of the sexual harassment on the student, as well as for ending the sexual harassment and preventing its recurrence, when the employee engaged in the sexual activity in the context of the employee's provision of aid, benefits, or services to students (*e.g.*, teaching, counseling, supervising, advising, or transporting students).

A school should take steps to protect its students from sexual abuse by its employees. It is therefore imperative for a school to develop policies prohibiting inappropriate conduct by school personnel and procedures for identifying and responding to such conduct. For example, this could include implementing codes of conduct, which might address what is commonly known as grooming – a desensitization strategy common in adult educator sexual misconduct. Such policies and procedures can ensure that students, parents, and

school personnel have clear guidelines on what are appropriate and inappropriate interactions between adults and students in a school setting or in school-sponsored activities. Additionally, a school should provide training for administrators, teachers, staff, parents, and age-appropriate classroom information for students to ensure that everyone understands what types of conduct are prohibited and knows how to respond when problems arise.[11]

## B.  Students Protected by Title IX

**B-1.  Does Title IX protect all students from sexual violence?**

**Answer:**  Yes. Title IX protects all students at recipient institutions from sex discrimination, including sexual violence. Any student can experience sexual violence: from elementary to professional school students; male and female students; straight, gay, lesbian, bisexual and transgender students; part-time and full-time students; students with and without disabilities; and students of different races and national origins.

**B-2.  How should a school handle sexual violence complaints in which the complainant and the alleged perpetrator are members of the same sex?**

**Answer:**  A school's obligation to respond appropriately to sexual violence complaints is the same irrespective of the sex or sexes of the parties involved. Title IX protects all students from sexual violence, regardless of the sex of the alleged perpetrator or complainant, including when they are members of the same sex. A school must investigate and resolve allegations of sexual violence involving parties of the same sex using the same procedures and standards that it uses in all complaints involving sexual violence.

Title IX's sex discrimination prohibition extends to claims of discrimination based on gender identity or failure to conform to stereotypical notions of masculinity or femininity and OCR accepts such complaints for investigation. Similarly, the actual or perceived sexual orientation or gender identity of the parties does not change a school's obligations. Indeed, lesbian, gay, bisexual, and transgender (LGBT) youth report high rates of sexual harassment and sexual violence. A school should investigate and resolve allegations of sexual violence regarding LGBT students using the same procedures and standards that it

---

[11] For additional informational on training please see the Department of Education's Resource and Emergency Management for Schools Technical Assistance Center – Adult Sexual Misconduct in Schools: Prevention and Management Training, available at http://rems.ed.gov/Docs/ASM_Marketing_Flyer.pdf.

uses in all complaints involving sexual violence. The fact that incidents of sexual violence may be accompanied by anti-gay comments or be partly based on a student's actual or perceived sexual orientation does not relieve a school of its obligation under Title IX to investigate and remedy those instances of sexual violence.

If a school's policies related to sexual violence include examples of particular types of conduct that violate the school's prohibition on sexual violence, the school should consider including examples of same-sex conduct. In addition, a school should ensure that staff are capable of providing culturally competent counseling to all complainants. Thus, a school should ensure that its counselors and other staff who are responsible for receiving and responding to complaints of sexual violence, including investigators and hearing board members, receive appropriate training about working with LGBT and gender-nonconforming students and same-sex sexual violence. See questions J-1 to J-4 for additional information regarding training.

Gay-straight alliances and similar student-initiated groups can also play an important role in creating safer school environments for LGBT students. On June 14, 2011, the Department issued guidance about the rights of student-initiated groups in public secondary schools under the Equal Access Act. That guidance is available at http://www2.ed.gov/policy/elsec/guid/secletter/110607.html.

**B-3.  What issues may arise with respect to students with disabilities who experience sexual violence?**

**Answer:**  When students with disabilities experience sexual violence, federal civil rights laws other than Title IX may also be relevant to a school's responsibility to investigate and address such incidents.[12] Certain students require additional assistance and support. For example, students with intellectual disabilities may need additional help in learning about sexual violence, including a school's sexual violence education and prevention programs, what constitutes sexual violence and how students can report incidents of sexual

---

[12] OCR enforces two civil rights laws that prohibit disability discrimination. Section 504 of the Rehabilitation Act of 1973 (Section 504) prohibits disability discrimination by public or private entities that receive federal financial assistance, and Title II of the American with Disabilities Act of 1990 (Title II) prohibits disability discrimination by all state and local public entities, regardless of whether they receive federal funding. *See* 29 U.S.C. § 794 and 34 C.F.R. part 104; 42 U.S.C. § 12131 *et seq.* and 28 C.F.R. part 35. OCR and the U.S. Department of Justice (DOJ) share the responsibility of enforcing Title II in the educational context. The Department of Education's Office of Special Education Programs in the Office of Special Education and Rehabilitative Services administers Part B of the Individuals with Disabilities Education Act (IDEA). 20 U.S.C. 1400 *et seq.* and 34 C.F.R. part 300. IDEA provides financial assistance to states, and through them to local educational agencies, to assist in providing special education and related services to eligible children with disabilities ages three through twenty-one, inclusive.

violence. In addition, students with disabilities who experience sexual violence may require additional services and supports, including psychological services and counseling services. Postsecondary students who need these additional services and supports can seek assistance from the institution's disability resource office.

A student who has not been previously determined to have a disability may, as a result of experiencing sexual violence, develop a mental health-related disability that could cause the student to need special education and related services. At the elementary and secondary education level, this may trigger a school's child find obligations under IDEA and the evaluation and placement requirements under Section 504, which together require a school to evaluate a student suspected of having a disability to determine if he or she has a disability that requires special education or related aids and services.[13]

A school must also ensure that any school reporting forms, information, or training about sexual violence be provided in a manner that is accessible to students and employees with disabilities, for example, by providing electronically-accessible versions of paper forms to individuals with print disabilities, or by providing a sign language interpreter to a deaf individual attending a training. See question J-4 for more detailed information on student training.

**B-4.** **What issues arise with respect to international students and undocumented students who experience sexual violence?**

**Answer:** Title IX protects all students at recipient institutions in the United States regardless of national origin, immigration status, or citizenship status.[14] A school should ensure that all students regardless of their immigration status, including undocumented students and international students, are aware of their rights under Title IX. A school must also ensure that any school reporting forms, information, or training about sexual violence be provided in a manner accessible to students who are English language learners. OCR recommends that a school coordinate with its international office and its undocumented student program coordinator, if applicable, to help communicate information about Title IX in languages that are accessible to these groups of students. OCR also encourages schools to provide foreign national complainants with information about the U nonimmigrant status and the T nonimmigrant status. The U nonimmigrant status is set

---

[13] *See* 34 C.F.R. §§ 300.8; 300.111; 300.201; 300.300-300.311 (IDEA); 34 C.F.R. §§ 104.3(j) and 104.35 (Section 504). Schools must comply with applicable consent requirements with respect to evaluations. *See* 34 C.F.R. § 300.300.
[14] OCR enforces Title VI of the Civil Rights Act of 1964, which prohibits discrimination by recipients of federal financial assistance on the basis of race, color, or national origin. 42 U.S.C. § 2000d.

aside for victims of certain crimes who have suffered substantial mental or physical abuse as a result of the crime and are helpful to law enforcement agency in the investigation or prosecution of the qualifying criminal activity.[15]  The T nonimmigrant status  is available for victims of severe forms of human trafficking who generally comply with a law enforcement agency in the investigation or prosecution of the human trafficking and who would suffer extreme hardship involving unusual and severe harm if they were removed from the United States.[16]

A school should be mindful that unique issues may arise when a foreign student on a student visa experiences sexual violence. For example, certain student visas require the student to maintain a full-time course load (generally at least 12 academic credit hours per term), but a student may need to take a reduced course load while recovering from the immediate effects of the sexual violence. OCR recommends that a school take steps to ensure that international students on student visas understand that they must typically seek prior approval of the designated school official (DSO) for student visas to drop below a full-time course load. A school may also want to encourage its employees involved in handling sexual violence complaints and counseling students who have experienced sexual violence to approach the DSO on the student's behalf if the student wishes to drop below a full-time course load. OCR recommends that a school take steps to ensure that its employees who work with international students, including the school's DSO, are trained on the school's sexual violence policies and that employees involved in handling sexual violence complaints and counseling students who have experienced sexual violence are aware of the special issues that international students may encounter. See questions J-1 to J-4 for additional information regarding training.

A school should also be aware that threatening students with deportation or invoking a student's immigration status in an attempt to intimidate or deter a student from filing a Title IX complaint would violate Title IX's protections against retaliation. For more information on retaliation see question K-1.

_____

[15] For more information on the U nonimmigrant status, see http://www.uscis.gov/humanitarian/victims-human-trafficking-other-crimes/victims-criminal-activity-u-nonimmigrant-status/questions-answers-victims-criminal-activity-u-nonimmigrant-status.
[16] For more information on the T nonimmigrant status, see http://www.uscis.gov/humanitarian/victims-human-trafficking-other-crimes/victims-human-trafficking-t-nonimmigrant-status.

**B-5.  How should a school respond to sexual violence when the alleged perpetrator is not affiliated with the school?**

**Answer:**  The appropriate response will differ depending on the level of control the school has over the alleged perpetrator. For example, if an athlete or band member from a visiting school sexually assaults a student at the home school, the home school may not be able to discipline or take other direct action against the visiting athlete or band member. However (and subject to the confidentiality provisions discussed in Section E), it should conduct an inquiry into what occurred and should report the incident to the visiting school and encourage the visiting school to take appropriate action to prevent further sexual violence. The home school should also notify the student of any right to file a complaint with the alleged perpetrator's school or local law enforcement. The home school may also decide not to invite the visiting school back to its campus.

Even though a school's ability to take direct action against a particular perpetrator may be limited, the school must still take steps to provide appropriate remedies for the complainant and, where appropriate, the broader school population. This may include providing support services for the complainant, and issuing new policy statements making it clear that the school does not tolerate sexual violence and will respond to any reports about such incidents. For additional information on interim measures see questions G-1 to G-3.

**C.  Title IX Procedural Requirements**

*Overview*

**C-1.  What procedures must a school have in place to prevent sexual violence and resolve complaints?**

**Answer:**  The Title IX regulations outline three key procedural requirements. Each school must:

(1) disseminate a notice of nondiscrimination (see question C-2);[17]

(2) designate at least one employee to coordinate its efforts to comply with and carry out its responsibilities under Title IX (see questions C-3 to C-4);[18] and

---

[17] 34 C.F.R. § 106.9.
[18] *Id.* § 106.8(a).

(3) adopt and publish grievance procedures providing for the prompt and equitable resolution of student and employee sex discrimination complaints (see questions C-5 to C-6).[19]

These requirements apply to all forms of sex discrimination and are particularly important for preventing and effectively responding to sexual violence.

Procedural requirements under other federal laws may also apply to complaints of sexual violence, including the requirements of the Clery Act.[20] For additional information about the procedural requirements in the Clery Act, please see http://www2.ed.gov/admins/lead/safety/campus.html.

*Notice of Nondiscrimination*

**C-2. What information must be included in a school's notice of nondiscrimination?**

**Answer:** The notice of nondiscrimination must state that the school does not discriminate on the basis of sex in its education programs and activities, and that it is required by Title IX not to discriminate in such a manner. The notice must state that questions regarding Title IX may be referred to the school's Title IX coordinator or to OCR. The school must notify all of its students and employees of the name or title, office address, telephone number, and email address of the school's designated Title IX coordinator.[21]

*Title IX Coordinator*

**C-3. What are a Title IX coordinator's responsibilities?**

**Answer:** A Title IX coordinator's core responsibilities include overseeing the school's response to Title IX reports and complaints and identifying and addressing any patterns or systemic problems revealed by such reports and complaints. This means that the Title IX coordinator must have knowledge of the requirements of Title IX, of the school's own policies and procedures on sex discrimination, and of all complaints raising Title IX issues throughout the school. To accomplish this, subject to the exemption for school counseling employees discussed in question E-3, the Title IX coordinator must be informed of all

---

[19] *Id.* § 106.8(b).

[20] All postsecondary institutions participating in the Higher Education Act's Title IV student financial assistance programs must comply with the Clery Act.

[21] For more information on notices of nondiscrimination, please see OCR's Notice of Nondiscrimination (August 2010), available at http://www.ed.gov/ocr/docs/nondisc.pdf.

reports and complaints raising Title IX issues, even if the report or complaint was initially filed with another individual or office or if the investigation will be conducted by another individual or office. The school should ensure that the Title IX coordinator is given the training, authority, and visibility necessary to fulfill these responsibilities.

Because the Title IX coordinator must have knowledge of all Title IX reports and complaints at the school, this individual (when properly trained) is generally in the best position to evaluate a student's request for confidentiality in the context of the school's responsibility to provide a safe and nondiscriminatory environment for all students. A school may determine, however, that another individual should perform this role. For additional information on confidentiality requests, see questions E-1 to E-4. If a school relies in part on its disciplinary procedures to meet its Title IX obligations, the Title IX coordinator should review the disciplinary procedures to ensure that the procedures comply with the prompt and equitable requirements of Title IX as discussed in question C-5.

In addition to these core responsibilities, a school may decide to give its Title IX coordinator additional responsibilities, such as: providing training to students, faculty, and staff on Title IX issues; conducting Title IX investigations, including investigating facts relevant to a complaint, and determining appropriate sanctions against the perpetrator and remedies for the complainant; determining appropriate interim measures for a complainant upon learning of a report or complaint of sexual violence; and ensuring that appropriate policies and procedures are in place for working with local law enforcement and coordinating services with local victim advocacy organizations and service providers, including rape crisis centers. A school must ensure that its Title IX coordinator is appropriately trained in all areas over which he or she has responsibility. The Title IX coordinator or designee should also be available to meet with students as needed.

If a school designates more than one Title IX coordinator, the school's notice of nondiscrimination and Title IX grievance procedures should describe each coordinator's responsibilities, and one coordinator should be designated as having ultimate oversight responsibility.

**C-4. Are there any employees who should not serve as the Title IX coordinator?**

**Answer:** Title IX does not categorically preclude particular employees from serving as Title IX coordinators. However, Title IX coordinators should not have other job responsibilities that may create a conflict of interest. Because some complaints may raise issues as to whether or how well the school has met its Title IX obligations, designating

the same employee to serve both as the Title IX coordinator and the general counsel (which could include representing the school in legal claims alleging Title IX violations) poses a serious risk of a conflict of interest. Other employees whose job responsibilities may conflict with a Title IX coordinator's responsibilities include Directors of Athletics, Deans of Students, and any employee who serves on the judicial/hearing board or to whom an appeal might be made. Designating a full-time Title IX coordinator will minimize the risk of a conflict of interest.

*Grievance Procedures*

**C-5.  Under Title IX, what elements should be included in a school's procedures for responding to complaints of sexual violence?**

Answer: Title IX requires that a school adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints of sex discrimination, including sexual violence. In evaluating whether a school's grievance procedures satisfy this requirement, OCR will review all aspects of a school's policies and practices, including the following elements that are critical to achieve compliance with Title IX:

(1)  notice to students, parents of elementary and secondary students, and employees of the grievance procedures, including where complaints may be filed;

(2)  application of the grievance procedures to complaints filed by students or on their behalf alleging sexual violence carried out by employees, other students, or third parties;

(3)  provisions for adequate, reliable, and impartial investigation of complaints, including the opportunity for both the complainant and alleged perpetrator to present witnesses and evidence;

(4)  designated and reasonably prompt time frames for the major stages of the complaint process (see question F-8);

(5)  written notice to the complainant and alleged perpetrator of the outcome of the complaint (see question H-3); and

(6)  assurance that the school will take steps to prevent recurrence of any sexual violence and remedy discriminatory effects on the complainant and others, if appropriate.

To ensure that students and employees have a clear understanding of what constitutes sexual violence, the potential consequences for such conduct, and how the school processes complaints, a school's Title IX grievance procedures should also explicitly include the following in writing, some of which themselves are mandatory obligations under Title IX:

(1)   a statement of the school's jurisdiction over Title IX complaints;

(2)   adequate definitions of sexual harassment (which includes sexual violence) and an explanation as to when such conduct creates a hostile environment;

(3)   reporting policies and protocols, including provisions for confidential reporting;

(4)   identification of the employee or employees responsible for evaluating requests for confidentiality;

(5)   notice that Title IX prohibits retaliation;

(6)   notice of a student's right to file a criminal complaint and a Title IX complaint simultaneously;

(7)   notice of available interim measures that  may be taken to protect the student in the educational setting;

(8)   the evidentiary standard that must be used (preponderance of the evidence) (*i.e.*, more likely than not that sexual violence occurred) in resolving a complaint;

(9)   notice of potential remedies for students;

(10)  notice of potential sanctions against perpetrators; and

(11)  sources of counseling, advocacy, and support.

For more information on interim measures, see questions G-1 to G-3.

The rights established under Title IX must be interpreted consistently with any federally guaranteed due process rights. Procedures that ensure the Title IX rights of the complainant, while at the same time according any federally guaranteed due process to both parties involved, will lead to sound and supportable decisions. Of course, a school should ensure that steps to accord any due process rights do not restrict or unnecessarily delay the protections provided by Title IX to the complainant.

A school's procedures and practices will vary in detail, specificity, and components, reflecting differences in the age of its students, school size and administrative structure, state or local legal requirements (*e.g.*, mandatory reporting requirements for schools working with minors), and what it has learned from past experiences.

**C-6. Is a school required to use separate grievance procedures for sexual violence complaints?**

**Answer:** No. Under Title IX, a school may use student disciplinary procedures, general Title IX grievance procedures, sexual harassment procedures, or separate procedures to resolve sexual violence complaints. However, any procedures used for sexual violence complaints, including disciplinary procedures, must meet the Title IX requirement of affording a complainant a prompt and equitable resolution (as discussed in question C-5), including applying the preponderance of the evidence standard of review. As discussed in question C-3, the Title IX coordinator should review any process used to resolve complaints of sexual violence to ensure it complies with requirements for prompt and equitable resolution of these complaints. When using disciplinary procedures, which are often focused on the alleged perpetrator and can take considerable time, a school should be mindful of its obligation to provide interim measures to protect the complainant in the educational setting. For more information on timeframes and interim measures, see questions F-8 and G-1 to G-3.

**D.   Responsible Employees and Reporting**[22]

**D-1. Which school employees are obligated to report incidents of possible sexual violence to school officials?**

**Answer:**   Under Title IX, whether an individual is obligated to report incidents of alleged sexual violence generally depends on whether the individual is a responsible employee of the school. A responsible employee must report incidents of sexual violence to the Title IX coordinator or other appropriate school designee, subject to the exemption for school counseling employees discussed in question E-3. This is because, as discussed in question A-4, a school is obligated to address sexual violence about which a responsible employee knew or should have known. As explained in question C-3, the Title IX coordinator must be informed of all reports and complaints raising Title IX issues, even if the report or

---

[22] This document addresses only Title IX's reporting requirements. It does not address requirements under the Clery Act or other federal, state, or local laws, or an individual school's code of conduct.

complaint was initially filed with another individual or office, subject to the exemption for school counseling employees discussed in question E-3.

**D-2.  Who is a "responsible employee"?**

**Answer**:  According to OCR's *2001 Guidance*, a responsible employee includes any employee: who has the authority to take action to redress sexual violence; who has been given the duty of reporting incidents of sexual violence or any other misconduct by students to the Title IX coordinator or other appropriate school designee; or whom a student could reasonably believe has this authority or duty.[23]

A school must make clear to all of its employees and students which staff members are responsible employees so that students can make informed decisions about whether to disclose information to those employees. A school must also inform all employees of their own reporting responsibilities and the importance of informing complainants of: the reporting obligations of responsible employees; complainants' option to request confidentiality and available confidential advocacy, counseling, or other support services; and complainants' right to file a Title IX complaint with the school and to report a crime to campus or local law enforcement.

Whether an employee is a responsible employee will vary depending on factors such as the age and education level of the student, the type of position held by the employee, and consideration of both formal and informal school practices and procedures. For example, while it may be reasonable for an elementary school student to believe that a custodial staff member or cafeteria worker has the authority or responsibility to address student misconduct, it is less reasonable for a college student to believe that a custodial staff member or dining hall employee has this same authority.

As noted in response to question A-4, when a responsible employee knows or reasonably should know of possible sexual violence, OCR deems a school to have notice of the sexual violence. The school must take immediate and appropriate steps to investigate or otherwise determine what occurred (subject to the confidentiality provisions discussed in Section E), and, if the school determines that sexual violence created a hostile environment, the school must then take appropriate steps to address the situation. The

---

[23] The Supreme Court held that a school will only be liable for money damages in a private lawsuit where there is actual notice to a school official with the authority to address the alleged discrimination and take corrective action. *Gebser v. Lago Vista Ind. Sch. Dist.*, 524 U.S. 274, 290 (1998), and *Davis*, 524 U.S. at 642. The concept of a "responsible employee" under OCR's guidance for administrative enforcement of Title IX is broader.

school has this obligation regardless of whether the student, student's parent, or a third party files a formal complaint. For additional information on a school's responsibilities to address student-on-student sexual violence, see question A-5. For additional information on training for school employees, see questions J-1 to J-3.

**D-3. What information is a responsible employee obligated to report about an incident of possible student-on-student sexual violence?**

**Answer:** Subject to the exemption for school counseling employees discussed in question E-3, a responsible employee must report to the school's Title IX coordinator, or other appropriate school designee, all relevant details about the alleged sexual violence that the student or another person has shared and that the school will need to determine what occurred and to resolve the situation. This includes the names of the alleged perpetrator (if known), the student who experienced the alleged sexual violence, other students involved in the alleged sexual violence, as well as relevant facts, including the date, time, and location. A school must make clear to its responsible employees to whom they should report an incident of alleged sexual violence.

To ensure compliance with these reporting obligations, it is important for a school to train its responsible employees on Title IX and the school's sexual violence policies and procedures. For more information on appropriate training for school employees, see question J-1 to J-3.

**D-4. What should a responsible employee tell a student who discloses an incident of sexual violence?**

**Answer**: Before a student reveals information that he or she may wish to keep confidential, a responsible employee should make every effort to ensure that the student understands: (i) the employee's obligation to report the names of the alleged perpetrator and student involved in the alleged sexual violence, as well as relevant facts regarding the alleged incident (including the date, time, and location), to the Title IX coordinator or other appropriate school officials, (ii) the student's option to request that the school maintain his or her confidentiality, which the school (*e.g.*, Title IX coordinator) will consider, and (iii) the student's ability to share the information confidentially with counseling, advocacy, health, mental health, or sexual-assault-related services (*e.g.*, sexual assault resource centers, campus health centers, pastoral counselors, and campus mental health centers). As discussed in questions E-1 and E-2, if the student requests confidentiality, the Title IX coordinator or other appropriate school designee responsible for evaluating requests for confidentiality should make every effort to respect this request

and should evaluate the request in the context of the school's responsibility to provide a safe and nondiscriminatory environment for all students.

**D-5.** **If a student informs a resident assistant/advisor (RA) that he or she was subjected to sexual violence by a fellow student, is the RA obligated under Title IX to report the incident to school officials?**

**Answer:**  As discussed in questions D-1 and D-2, for Title IX purposes, whether an individual is obligated under Title IX to report alleged sexual violence to the school's Title IX coordinator or other appropriate school designee generally depends on whether the individual is a responsible employee.

The duties and responsibilities of RAs vary among schools, and, therefore, a school should consider its own policies and procedures to determine whether its RAs are responsible employees who must report incidents of sexual violence to the Title IX coordinator or other appropriate school designee.[24] When making this determination, a school should consider if its RAs have the general authority to take action to redress misconduct or the duty to report misconduct to appropriate school officials, as well as whether students could reasonably believe that RAs have this authority or duty. A school should also consider whether it has determined and clearly informed students that RAs are generally available for confidential discussions and do not have the authority or responsibility to take action to redress any misconduct or to report any misconduct to the Title IX coordinator or other appropriate school officials. A school should pay particular attention to its RAs' obligations to report other student violations of school policy (*e.g.*, drug and alcohol violations or physical assault). If an RA is required to report other misconduct that violates school policy, then the RA would be considered a responsible employee obligated to report incidents of sexual violence that violate school policy.

If an RA is a responsible employee, the RA should make every effort to ensure that *before* the student reveals information that he or she may wish to keep confidential, the student understands the RA's reporting obligation and the student's option to request that the school maintain confidentiality. It is therefore important that schools widely disseminate policies and provide regular training clearly identifying the places where students can seek confidential support services so that students are aware of this information. The RA

---

[24] Postsecondary institutions should be aware that, regardless of whether an RA is a responsible employee under Title IX, RAs are considered "campus security authorities" under the Clery Act. A school's responsibilities in regard to crimes reported to campus security authorities are discussed in the Department's regulations on the Clery Act at 34 C.F.R. § 668.46.

should also explain to the student (again, before the student reveals information that he or she may wish to keep confidential) that, although the RA must report the names of the alleged perpetrator (if known), the student who experienced the alleged sexual violence, other students involved in the alleged sexual violence, as well as relevant facts, including the date, time, and location to the Title IX coordinator or other appropriate school designee, the school will protect the student's confidentiality to the greatest extent possible. Prior to providing information about the incident to the Title IX coordinator or other appropriate school designee, the RA should consult with the student about how to protect his or her safety and the details of what will be shared with the Title IX coordinator. The RA should explain to the student that reporting this information to the Title IX coordinator or other appropriate school designee does not necessarily mean that a formal complaint or investigation under the school's Title IX grievance procedure must be initiated if the student requests confidentiality. As discussed in questions E-1 and E-2, if the student requests confidentiality, the Title IX coordinator or other appropriate school designee responsible for evaluating requests for confidentiality should make every effort to respect this request and should evaluate the request in the context of the school's responsibility to provide a safe and nondiscriminatory environment for all students.

Regardless of whether a reporting obligation exists, all RAs should inform students of their right to file a Title IX complaint with the school and report a crime to campus or local law enforcement. If a student discloses sexual violence to an RA who is a responsible employee, the school will be deemed to have notice of the sexual violence even if the student does not file a Title IX complaint. Additionally, all RAs should provide students with information regarding on-campus resources, including victim advocacy, housing assistance, academic support, counseling, disability services, health and mental health services, and legal assistance. RAs should also be familiar with local rape crisis centers or other off-campus resources and provide this information to students.

**E.   Confidentiality and a School's Obligation to Respond to Sexual Violence**

**E-1.   How should a school respond to a student's request that his or her name not be disclosed to the alleged perpetrator or that no investigation or disciplinary action be pursued to address the alleged sexual violence?**

**Answer:**  Students, or parents of minor students, reporting incidents of sexual violence sometimes ask that the students' names not be disclosed to the alleged perpetrators or that no investigation or disciplinary action be pursued to address the alleged sexual violence. OCR strongly supports a student's interest in confidentiality in cases involving sexual violence. There are situations in which a school must override a student's request

for confidentiality in order to meet its Title IX obligations; however, these instances will be limited and the information should only be shared with individuals who are responsible for handling the school's response to incidents of sexual violence. Given the sensitive nature of reports of sexual violence, a school should ensure that the information is maintained in a secure manner. A school should be aware that disregarding requests for confidentiality can have a chilling effect and discourage other students from reporting sexual violence. In the case of minors, state mandatory reporting laws may require disclosure, but can generally be followed without disclosing information to school personnel who are not responsible for handling the school's response to incidents of sexual violence.[25]

Even if a student does not specifically ask for confidentiality, to the extent possible, a school should only disclose information regarding alleged incidents of sexual violence to individuals who are responsible for handling the school's response. To improve trust in the process for investigating sexual violence complaints, a school should notify students of the information that will be disclosed, to whom it will be disclosed, and why. Regardless of whether a student complainant requests confidentiality, a school must take steps to protect the complainant as necessary, including taking interim measures before the final outcome of an investigation. For additional information on interim measures see questions G-1 to G-3.

For Title IX purposes, if a student requests that his or her name not be revealed to the alleged perpetrator or asks that the school not investigate or seek action against the alleged perpetrator, the school should inform the student that honoring the request may limit its ability to respond fully to the incident, including pursuing disciplinary action against the alleged perpetrator. The school should also explain that Title IX includes protections against retaliation, and that school officials will not only take steps to prevent retaliation but also take strong responsive action if it occurs. This includes retaliatory actions taken by the school and school officials. When a school knows or reasonably should know of possible retaliation by other students or third parties, including threats, intimidation, coercion, or discrimination (including harassment), it must take immediate

---

[25] The school should be aware of the alleged student perpetrator's right under the Family Educational Rights and Privacy Act ("FERPA") torequest to inspect and review information about the allegations if the information directly relates to the alleged student perpetrator and the information is maintained by the school as an education record. In such a case, the school must either redact the complainant's name and all identifying information before allowing the alleged perpetrator to inspect and review the sections of the complaint that relate to him or her, or must inform the alleged perpetrator of the specific information in the complaint that are about the alleged perpetrator. *See* 34 C.F.R. § 99.12(a) The school should also make complainants aware of this right and explain how it might affect the school's ability to maintain complete confidentiality.

and appropriate steps to investigate or otherwise determine what occurred. Title IX requires the school to protect the complainant and ensure  his or her safety as necessary. See question K-1 regarding retaliation.

If the student still requests that his or her name not be disclosed to the alleged perpetrator or that the school not investigate or seek action against the alleged perpetrator, the school will need to determine whether or not it can honor such a request while still providing a safe and nondiscriminatory environment for all students, including the student who reported the sexual violence. As discussed in question C-3, the Title IX coordinator is generally in the best position to evaluate confidentiality requests. Because schools vary widely in size and administrative structure, OCR recognizes that a school may reasonably determine that an employee other than the Title IX coordinator, such as a sexual assault response coordinator, dean, or other school official, is better suited to evaluate such requests. Addressing the needs of a student reporting sexual violence while determining an appropriate institutional response requires expertise and attention, and a school should ensure that it assigns these responsibilities to employees with the capability and training to fulfill them. For example, if a school has a sexual assault response coordinator, that person should be consulted in evaluating requests for confidentiality. The school should identify in its Title IX policies and procedures the employee or employees responsible for making such determinations.

If the school determines that it can respect the student's request not to disclose his or her identity to the alleged perpetrator, it should take all reasonable steps to  respond to the complaint consistent with the request. Although a student's request to have his or her name withheld may limit the school's ability to respond fully to an individual allegation of sexual violence, other means may be available to address the sexual violence. There are steps a school can take to limit the effects of the alleged sexual violence and prevent its recurrence without initiating formal action against the alleged perpetrator or revealing the identity of the student complainant. Examples include providing increased monitoring, supervision, or security at locations or activities where the misconduct occurred; providing training and education materials for students and employees; changing and publicizing the school's policies on sexual violence; and conducting climate surveys regarding sexual violence. In instances affecting many students, an alleged perpetrator can be put on notice of allegations of harassing behavior and be counseled appropriately without revealing, even indirectly, the identity of the student complainant. A school must also take immediate action as necessary to protect the student while keeping the identity of the student confidential. These actions may include providing support services to the student and changing living arrangements or course schedules, assignments, or tests.

**E-2.  What factors should a school consider in weighing a student's request for confidentiality?**

**Answer:**  When weighing a student's request for confidentiality that could preclude a meaningful investigation or potential discipline of the alleged perpetrator, a school should consider a range of factors.

These factors include circumstances that suggest there is an increased risk of the alleged perpetrator committing additional acts of sexual violence or other violence (e.g., whether there have been other sexual violence complaints about the same alleged perpetrator, whether the alleged perpetrator has a history of arrests or records from a prior school indicating a history of violence, whether the alleged perpetrator threatened further sexual violence or other violence against the student or others, and whether the sexual violence was committed by multiple perpetrators). These factors also include circumstances that suggest there is an increased risk of future acts of sexual violence under similar circumstances (e.g., whether the student's report reveals a pattern of perpetration (e.g., via illicit use of drugs or alcohol) at a given location or by a particular group). Other factors that should be considered in assessing a student's request for confidentiality include whether the sexual violence was perpetrated with a weapon; the age of the student subjected to the sexual violence; and whether the school possesses other means to obtain relevant evidence (e.g., security cameras or personnel, physical evidence).

A school should take requests for confidentiality seriously, while at the same time considering its responsibility to provide a safe and nondiscriminatory environment for all students, including the student who reported the sexual violence. For example, if the school has credible information that the alleged perpetrator has committed one or more prior rapes, the balance of factors would compel the school to investigate the allegation of sexual violence, and if appropriate, pursue disciplinary action in a manner that may require disclosure of the student's identity to the alleged perpetrator. If the school determines that it must disclose a student's identity to an alleged perpetrator, it should inform the student prior to making this disclosure. In these cases, it is also especially important for schools to take whatever interim measures are necessary to protect the student and ensure the safety of other students. If a school has a sexual assault response coordinator, that person should be consulted in identifying safety risks and interim measures that are necessary to protect the student. In the event the student requests that the school inform the perpetrator that the student asked the school not to investigate or seek discipline, the school should honor this request and inform the alleged perpetrator that the school made the decision to go forward. For additional information on interim measures see questions G-1 to G-3. Any school officials responsible for

discussing safety and confidentiality with students should be trained on the effects of trauma and the appropriate methods to communicate with students subjected to sexual violence. See questions J-1 to J-3.

On the other hand, if, for example, the school has no credible information about prior sexual violence committed by the alleged perpetrator and the alleged sexual violence was not perpetrated with a weapon or accompanied by threats to repeat the sexual violence against the complainant or others or part of a larger pattern at a given location or by a particular group, the balance of factors would likely compel the school to respect the student's request for confidentiality. In this case the school should still take all reasonable steps to respond to the complaint consistent with the student's confidentiality request and determine whether interim measures are appropriate or necessary. Schools should be mindful that traumatic events such as sexual violence can result in delayed decisionmaking by a student who has experienced sexual violence. Hence, a student who initially requests confidentiality might later request that a full investigation be conducted.

**E-3.   What are the reporting responsibilities of school employees who provide or support the provision of counseling, advocacy, health, mental health, or sexual assault-related services to students who have experienced sexual violence?**

**Answer:**  OCR does not require campus mental-health counselors, pastoral counselors, social workers, psychologists, health center employees, or any other person with a professional license requiring confidentiality, or who is supervised by such a person, to report, without the student's consent, incidents of sexual violence to the school in a way that identifies the student. Although these employees may have responsibilities that would otherwise make them responsible employees for Title IX purposes, OCR recognizes the importance of protecting the counselor-client relationship, which often requires confidentiality to ensure that students will seek the help they need.

Professional counselors and pastoral counselors whose official responsibilities include providing mental-health counseling to members of the school community are not required by Title IX to report *any* information regarding an incident of alleged sexual violence to the Title IX coordinator or other appropriate school designee.[26]

---

[26] The exemption from reporting obligations for pastoral and professional counselors under Title IX is consistent with the Clery Act. For additional information on reporting obligations under the Clery Act, see Office of Postsecondary Education, *Handbook for Campus Safety and Security Reporting* (2011), available at http://www2.ed.gov/admins/lead/safety/handbook.pdf. Similar to the Clery Act, for Title IX purposes, a pastoral counselor is a person who is associated with a religious order or denomination, is recognized by that religious

OCR recognizes that some people who provide assistance to students who experience sexual violence are not professional or pastoral counselors. They include all individuals who work or volunteer in on-campus sexual assault centers, victim advocacy offices, women's centers, or health centers ("non-professional counselors or advocates"), including front desk staff and students. OCR wants students to feel free to seek their assistance and therefore interprets Title IX to give schools the latitude not to require these individuals to report incidents of sexual violence in a way that identifies the student without the student's consent.[27] These non-professional counselors or advocates are valuable sources of support for students, and OCR strongly encourages schools to designate these individuals as confidential sources.

Pastoral and professional counselors and non-professional counselors or advocates should be instructed to inform students of their right to file a Title IX complaint with the school and a separate complaint with campus or local law enforcement. In addition to informing students about campus resources for counseling, medical, and academic support, these persons should also indicate that they are available to assist students in filing such complaints. They should also explain that Title IX includes protections against retaliation, and that school officials will not only take steps to prevent retaliation but also take strong responsive action if it occurs. This includes retaliatory actions taken by the school and school officials. When a school knows or reasonably should know of possible retaliation by other students or third parties, including threats, intimidation, coercion, or discrimination (including harassment), it must take immediate and appropriate steps to investigate or otherwise determine what occurred. Title IX requires the school to protect the complainant and ensure his or her safety as necessary.

In order to identify patterns or systemic problems related to sexual violence, a school should collect aggregate data about sexual violence incidents from non-professional counselors or advocates in their on-campus sexual assault centers, women's centers, or

---

order or denomination as someone who provides confidential counseling, and is functioning within the scope of that recognition as a pastoral counselor. A professional counselor is a person whose official responsibilities include providing mental health counseling to members of the institution's community and who is functioning within the scope of his or her license or certification. This definition applies even to professional counselors who are not employees of the school, but are under contract to provide counseling at the school. This includes individuals who are not yet licensed or certified as a counselor, but are acting in that role under the supervision of an individual who is licensed or certified. An example is a Ph.D. counselor-trainee acting under the supervision of a professional counselor at the school.

[27] Postsecondary institutions should be aware that an individual who is counseling students, but who does not meet the Clery Act definition of a pastoral or professional counselor, is not exempt from being a campus security authority if he or she otherwise has significant responsibility for student and campus activities. See fn. 24.

health centers. Such individuals should report only general information about incidents of sexual violence such as the nature, date, time, and general location of the incident and should take care to avoid reporting personally identifiable information about a student. Non-professional counselors and advocates should consult with students regarding what information needs to be withheld to protect their identity.

**E-4. Is a school required to investigate information regarding sexual violence incidents shared by survivors during public awareness events, such as "Take Back the Night"?**

**Answer:** No. OCR wants students to feel free to participate in preventive education programs and access resources for survivors. Therefore, public awareness events such as "Take Back the Night" or other forums at which students disclose experiences with sexual violence are not considered notice to the school for the purpose of triggering an individual investigation unless the survivor initiates a complaint. The school should instead respond to these disclosures by reviewing sexual assault policies, creating campus-wide educational programs, and conducting climate surveys to learn more about the prevalence of sexual violence at the school. Although Title IX does not require the school to investigate particular incidents discussed at such events, the school should ensure that survivors are aware of any available resources, including counseling, health, and mental health services. To ensure that the entire school community understands their Title IX rights related to sexual violence, the school should also provide information at these events on Title IX and how to file a Title IX complaint with the school, as well as options for reporting an incident of sexual violence to campus or local law enforcement.

**F.  Investigations and Hearings**

*Overview*

**F-1.  What elements should a school's Title IX investigation include?**

**Answer:** The specific steps in a school's Title IX investigation will vary depending on the nature of the allegation, the age of the student or students involved, the size and administrative structure of the school, state or local legal requirements (including mandatory reporting requirements for schools working with minors), and what it has learned from past experiences.

For the purposes of this document the term "investigation" refers to the process the school uses to resolve sexual violence complaints. This includes the fact-finding investigation and any hearing and decision-making process the school uses to determine: (1) whether or not the conduct occurred; and, (2) if the conduct occurred, what actions

the school will take to end the sexual violence, eliminate the hostile environment, and prevent its recurrence, which may include imposing sanctions on the perpetrator and providing remedies for the complainant and broader student population.

In all cases, a school's Title IX investigation must be adequate, reliable, impartial, and prompt and include the opportunity for both parties to present witnesses and other evidence. The investigation may include a hearing to determine whether the conduct occurred, but Title IX does not necessarily require a hearing.[28] Furthermore, neither Title IX nor the DCL specifies who should conduct the investigation. It could be the Title IX coordinator, provided there are no conflicts of interest, but it does not have to be. All persons involved in conducting a school's Title IX investigations must have training or experience in handling complaints of sexual violence and in the school's grievance procedures. For additional information on training, see question J-3.

When investigating an incident of alleged sexual violence for Title IX purposes, to the extent possible, a school should coordinate with any other ongoing school or criminal investigations of the incident and establish appropriate fact-finding roles for each investigator. A school should also consider whether information can be shared among the investigators so that complainants are not unnecessarily required to give multiple statements about a traumatic event. If the investigation includes forensic evidence, it may be helpful for a school to consult with local or campus law enforcement or a forensic expert to ensure that the evidence is correctly interpreted by school officials.  For additional information on working with campus or local law enforcement see question F-3.

If a school uses its student disciplinary procedures to meet its Title IX obligation to resolve complaints of sexual violence promptly and equitably, it should recognize that imposing sanctions against the perpetrator, without additional remedies, likely will not be sufficient to eliminate the hostile environment and prevent recurrence as required by Title IX. If a school typically processes complaints of sexual violence through its disciplinary process and that process, including any investigation and hearing, meets the Title IX requirements discussed above and enables the school to end the sexual violence, eliminate the hostile environment, and prevent its recurrence, then the school may use that process to satisfy its Title IX obligations and does not need to conduct a separate Title IX investigation. As discussed in question C-3, the Title IX coordinator should review the disciplinary process

---

[28] This answer addresses only Title IX's requirements for investigations. It does not address legal rights or requirements under the U.S. Constitution, the Clery Act, or other federal, state, or local laws.

to ensure that it: (1) complies with the prompt and equitable requirements of Title IX; (2) allows for appropriate interim measures to be taken to protect the complainant during the process; and (3) provides for remedies to the complainant and school community where appropriate. For more information about interim measures, see questions G-1 to G-3, and about remedies, see questions H-1 and H-2.

The investigation may include, but is not limited to, conducting interviews of the complainant, the alleged perpetrator, and any witnesses; reviewing law enforcement investigation documents, if applicable; reviewing student and personnel files; and gathering and examining other relevant documents or evidence. While a school has flexibility in how it structures the investigative process, for Title IX purposes, a school must give the complainant any rights that it gives to the alleged perpetrator. A balanced and fair process that provides the same opportunities to both parties will lead to sound and supportable decisions.[29] Specifically:

- Throughout the investigation, the parties must have an equal opportunity to present relevant witnesses and other evidence.

- The school must use a preponderance-of-the-evidence (*i.e.*, more likely than not) standard in any Title IX proceedings, including any fact-finding and hearings.

- If the school permits one party to have lawyers or other advisors at any stage of the proceedings, it must do so equally for both parties. Any school-imposed restrictions on the ability of lawyers or other advisors to speak or otherwise participate in the proceedings must also apply equally.

- If the school permits one party to submit third-party expert testimony, it must do so equally for both parties.

- If the school provides for an appeal, it must do so equally for both parties.

- Both parties must be notified, in writing, of the outcome of both the complaint and any appeal (see question H-3).

---

[29] As explained in question C-5, the parties may have certain due process rights under the U.S. Constitution.

*Intersection with Criminal Investigations*

**F-2.   What are the key differences between a school's Title IX investigation into allegations of sexual violence and a criminal investigation?**

**Answer:**  A criminal investigation is intended to determine whether an individual violated criminal law; and, if at the conclusion of the investigation, the individual is tried and found guilty, the individual may be imprisoned or subject to criminal penalties. The U.S. Constitution affords criminal defendants who face the risk of incarceration numerous protections, including, but not limited to, the right to counsel, the right to a speedy trial, the right to a jury trial, the right against self-incrimination, and the right to confrontation. In addition, government officials responsible for criminal investigations (including police and prosecutors) normally have discretion as to which complaints from the public they will investigate.

By contrast, a Title IX investigation will never result in incarceration of an individual and, therefore, the same procedural protections and legal standards are not required. Further, while a criminal investigation is initiated at the discretion of law enforcement authorities, a Title IX investigation is not discretionary; a school has a duty under Title IX to resolve complaints promptly and equitably and to provide a safe and nondiscriminatory environment for all students, free from sexual harassment and sexual violence. Because the standards for pursuing and completing criminal investigations are different from those used for Title IX investigations, the termination of a criminal investigation without an arrest or conviction does not affect the school's Title IX obligations.

Of course, criminal investigations conducted by local or campus law enforcement may be useful for fact gathering if the criminal investigation occurs within the recommended timeframe for Title IX investigations; but, even if a criminal investigation is ongoing, a school must still conduct its own Title IX investigation.

A school should notify complainants of the right to file a criminal complaint and should not dissuade a complainant from doing so either during or after the school's internal Title IX investigation. Title IX does not require a school to report alleged incidents of sexual violence to law enforcement, but a school may have reporting obligations under state, local, or other federal laws.

**F-3.   How should a school proceed when campus or local law enforcement agencies are conducting a criminal investigation while the school is conducting a parallel Title IX investigation?**

**Answer:**  A school should not wait for the conclusion of a criminal investigation or criminal proceeding to begin its own Title IX investigation. Although a school may need to delay temporarily the fact-finding portion of a Title IX investigation while the police are gathering evidence, it is important for a school to understand that during this brief delay in the Title IX investigation, it must take interim measures to protect the complainant in the educational setting. The school should also continue to update the parties on the status of the investigation and inform the parties when the school resumes its Title IX investigation. For additional information on interim measures see questions G-1 to G-3.

If a school delays the fact-finding portion of a Title IX investigation, the school must promptly resume and complete its fact-finding for the Title IX investigation once it learns that the police department has completed its evidence gathering stage of the criminal investigation. The school should not delay its investigation until the ultimate outcome of the criminal investigation or the filing of any charges. OCR recommends that a school work with its campus police, local law enforcement, and local prosecutor's office to learn when the evidence gathering stage of the criminal investigation is complete. A school may also want to enter into a memorandum of understanding (MOU) or other agreement with these agencies regarding the protocols and procedures for referring allegations of sexual violence, sharing information, and conducting contemporaneous investigations. Any MOU or other agreement must allow the school to meet its Title IX obligation to resolve complaints promptly and equitably, and must comply with the Family Educational Rights and Privacy Act ("FERPA") and other applicable privacy laws.

The DCL states that in one instance a prosecutor's office informed OCR that the police department's evidence gathering stage typically takes three to ten calendar days, although the delay in the school's investigation may be longer in certain instances. OCR understands that this example may not be representative and that the law enforcement agency's process often takes more than ten days. OCR recognizes that the length of time for evidence gathering by criminal investigators will vary depending on the specific circumstances of each case.

*Off-Campus Conduct*

**F-4.   Is a school required to process complaints of alleged sexual violence that occurred off campus?**

**Answer:**  Yes. Under Title IX, a school must process all complaints of sexual violence, regardless of where the conduct occurred, to determine whether the conduct occurred in the context of an education program or activity or had continuing effects on campus or in an off-campus education program or activity.

A school must determine whether the alleged off-campus sexual violence occurred in the context of an education program or activity of the school; if so, the school must treat the complaint in the same manner that it treats complaints regarding on-campus conduct. In other words, if a school determines that the alleged misconduct took place in the context of an education program or activity of the school, the fact that the alleged misconduct took place off campus does not relieve the school of its obligation to investigate the complaint as it would investigate a complaint of sexual violence that occurred on campus.

Whether the alleged misconduct occurred in this context may not always be apparent from the complaint, so a school may need to gather additional information in order to make such a determination. Off-campus education programs and activities are clearly covered and include, but are not limited to: activities that take place at houses of fraternities or sororities recognized by the school; school-sponsored field trips, including athletic team travel; and events for school clubs that occur off campus (*e.g.*, a debate team trip to another school or to a weekend competition).

Even if the misconduct did not occur in the context of an education program or activity, a school must consider the effects of the off-campus misconduct when evaluating whether there is a hostile environment on campus or in an off-campus education program or activity because students often experience the continuing effects of off-campus sexual violence while at school or in an off-campus education program or activity. The school cannot address the continuing effects of the off-campus sexual violence at school or in an off-campus education program or activity unless it processes the complaint and gathers appropriate additional information in accordance with its established procedures.

Once a school is on notice of off-campus sexual violence against a student, it must assess whether there are any continuing effects on campus or in an off-campus education program or activity that are creating or contributing to a hostile environment and, if so, address that hostile environment in the same manner in which it would address a hostile environment created by on-campus misconduct. The mere presence on campus or in an

off-campus education program or activity of the alleged perpetrator of off-campus sexual violence can have continuing effects that create a hostile environment. A school should also take steps to protect a student who alleges off-campus sexual violence from further harassment by the alleged perpetrator or his or her friends, and a school may have to take steps to protect other students from possible assault by the alleged perpetrator. In other words, the school should protect the school community in the same way it would had the sexual violence occurred on campus. Even if there are no continuing effects of the off-campus sexual violence experienced by the student on campus or in an off-campus education program or activity, the school still should handle these incidents as it would handle other off-campus incidents of misconduct or violence and consistent with any other applicable laws. For example, if a school, under its code of conduct, exercises jurisdiction over physical altercations between students that occur off campus outside of an education program or activity, it should also exercise jurisdiction over incidents of student-on-student sexual violence that occur off campus outside of an education program or activity.

_Hearings_[30]

**F-5.  Must a school allow or require the parties to be present during an entire hearing?**

   **Answer:**  If a school uses a hearing process to determine responsibility for acts of sexual violence, OCR does not require that the school allow a complainant to be present for the entire hearing; it is up to each school to make this determination. But if the school allows one party to be present for the entirety of a hearing, it must do so equally for both parties. At the same time, when requested, a school should make arrangements so that the complainant and the alleged perpetrator do not have to be present in the same room at the same time. These two objectives may be achieved by using closed circuit television or other means. Because a school has a Title IX obligation to investigate possible sexual violence, if a hearing is part of the school's Title IX investigation process, the school must not require a complainant to be present at the hearing as a prerequisite to proceed with the hearing.

---

[30] As noted in question F-1, the investigation may include a hearing to determine whether the conduct occurred, but Title IX does not necessarily require a hearing. Although Title IX does not dictate the membership of a hearing board, OCR discourages schools from allowing students to serve on hearing boards  in cases involving allegations of sexual violence.

**F-6.   May every witness at the hearing, including the parties, be cross-examined?**

**Answer:**  OCR does not require that a school allow cross-examination of witnesses, including the parties, if they testify at the hearing. But if the school allows one party to cross-examine witnesses, it must do so equally for both parties.

OCR strongly discourages a school from allowing the parties to personally question or cross-examine each other during a hearing on alleged sexual violence. Allowing an alleged perpetrator to question a complainant directly may be traumatic or intimidating, and may perpetuate a hostile environment. A school may choose, instead, to allow the parties to submit questions to a trained third party (*e.g.*, the hearing panel) to ask the questions on their behalf. OCR recommends that the third party screen the questions submitted by the parties and only ask those it deems appropriate and relevant to the case.

**F-7.   May the complainant's sexual history be introduced at hearings?**

**Answer:**  Questioning about the complainant's sexual history with anyone other than the alleged perpetrator should not be permitted. Further, a school should recognize that the mere fact of a current or previous consensual dating or sexual relationship between the two parties does not itself imply consent or preclude a finding of sexual violence. The school should also ensure that hearings are conducted in a manner that does not inflict additional trauma on the complainant.

*Timeframes*

**F-8.   What stages of the investigation are included in the 60-day timeframe referenced in the DCL as the length for a typical investigation?**

**Answer:**  As noted in the DCL, the 60-calendar day timeframe for investigations is based on OCR's experience in typical cases. The 60-calendar day timeframe refers to the entire investigation process, which includes conducting the fact-finding investigation, holding a hearing or engaging in another decision-making process to determine whether the alleged sexual violence occurred and created a hostile environment, and determining what actions the school will take to eliminate the hostile environment and prevent its recurrence, including imposing sanctions against the perpetrator and providing remedies for the complainant and school community, as appropriate. Although this timeframe does not include appeals, a school should be aware that an unduly long appeals process may impact whether the school's response was prompt and equitable as required by Title IX.

OCR does not require a school to complete investigations within 60 days; rather OCR evaluates on a case-by-case basis whether the resolution of sexual violence complaints is prompt and equitable. Whether OCR considers an investigation to be prompt as required by Title IX will vary depending on the complexity of the investigation and the severity and extent of the alleged conduct. OCR recognizes that the investigation process may take longer if there is a parallel criminal investigation or if it occurs partially during school breaks. A school may need to stop an investigation during school breaks or between school years, although a school should make every effort to try to conduct an investigation during these breaks unless so doing would sacrifice witness availability or otherwise compromise the process.

Because timeframes for investigations vary and a school may need to depart from the timeframes designated in its grievance procedures, both parties should be given periodic status updates throughout the process.

### G.  Interim Measures

### G-1.  Is a school required to take any interim measures before the completion of its investigation?

**Answer:**  Title IX requires a school to take steps to ensure equal access to its education programs and activities and protect the complainant as necessary, including taking interim measures before the final outcome of an investigation. The school should take these steps promptly once it has notice of a sexual violence allegation and should provide the complainant with periodic updates on the status of the investigation. The school should notify the complainant of his or her options to avoid contact with the alleged perpetrator and allow the complainant to change academic and extracurricular activities or his or her living, transportation, dining, and working situation as appropriate. The school should also ensure that the complainant is aware of his or her Title IX rights and any available resources, such as victim advocacy, housing assistance, academic support, counseling, disability services, health and mental health services, and legal assistance, and the right to report a crime to campus or local law enforcement. If a school does not offer these services on campus, it should enter into an MOU with a local victim services provider if possible.

Even when a school has determined that it can respect a complainant's request for confidentiality and therefore may not be able to respond fully to an allegation of sexual violence and initiate formal action against an alleged perpetrator, the school must take immediate action to protect the complainant while keeping the identity of the complainant confidential. These actions may include: providing support services to the

complainant; changing living arrangements or course schedules, assignments, or tests; and providing increased monitoring, supervision, or security at locations or activities where the misconduct occurred.

**G-2.  How should a school determine what interim measures to take?**

**Answer:**  The specific interim measures implemented and the process for implementing those measures will vary depending on the facts of each case. A school should consider a number of factors in determining what interim measures to take, including, for example, the specific need expressed by the complainant; the age of the students involved; the severity or pervasiveness of the allegations; any continuing effects on the complainant; whether the complainant and alleged perpetrator share the same residence hall, dining hall, class, transportation, or job location; and whether other judicial measures have been taken to protect the complainant (*e.g.*, civil protection orders).

In general, when taking interim measures, schools should minimize the burden on the complainant. For example, if the complainant and alleged perpetrator share the same class or residence hall, the school should not, as a matter of course, remove the complainant from the class or housing while allowing the alleged perpetrator to remain without carefully considering the facts of the case.

**G-3.  If a school provides all students with access to counseling on a fee basis, does that suffice for providing counseling as an interim measure?**

**Answer:**  No. Interim measures are determined by a school on a case-by-case basis. If a school determines that it needs to offer counseling to the complainant as part of its Title IX obligation to take steps to protect the complainant while the investigation is ongoing, it must not require the complainant to pay for this service.

**H.  Remedies and Notice of Outcome**[31]

**H-1.  What remedies should a school consider in a case of student-on-student sexual violence?**

> **Answer:**  Effective remedial action may include disciplinary action against the perpetrator, providing counseling for the perpetrator, remedies for the complainant and others, as well as changes to the school's overall services or policies. All services needed to remedy the hostile environment should be offered to the complainant. These remedies are separate from, and in addition to, any interim measure that may have been provided prior to the conclusion of the school's investigation. In any instance in which the complainant did not take advantage of a specific service (*e.g.,* counseling) when offered as an interim measure, the complainant should still be offered, and is still entitled to, appropriate final remedies that may include services the complainant declined as an interim measure. A refusal at the interim stage does not mean the refused service or set of services should not be offered as a remedy.
>
> If a school uses its student disciplinary procedures to meet its Title IX obligation to resolve complaints of sexual violence promptly and equitably, it should recognize that imposing sanctions against the perpetrator, without more, likely will not be sufficient to satisfy its Title IX obligation to eliminate the hostile environment, prevent its recurrence, and, as appropriate, remedy its effects. Additional remedies for the complainant and the school community may be necessary. If the school's student disciplinary procedure does not include a process for determining and implementing these remedies for the complainant and school community, the school will need to use another process for this purpose.
>
> Depending on the specific nature of the problem, remedies for the complainant may include, but are not limited to:
>
> - Providing an effective escort to ensure that the complainant can move safely between classes and activities;

---

[31] As explained in question A-5, if a school delays responding to allegations of sexual violence or responds inappropriately, the school's own inaction may subject the student to be subjected to a hostile environment. In this case, in addition to the remedies discussed in this section, the school will also be required to remedy the effects of the sexual violence that could reasonably have been prevented had the school responded promptly and appropriately.

- Ensuring the complainant and perpetrator do not share classes or extracurricular activities;

- Moving the perpetrator or complainant (if the complainant requests to be moved) to a different residence hall or, in the case of an elementary or secondary school student, to another school within the district;

- Providing comprehensive, holistic victim services including medical, counseling and academic support services, such as tutoring;

- Arranging for the complainant to have extra time to complete or re-take a class or withdraw from a class without an academic or financial penalty; and

- Reviewing any disciplinary actions taken against the complainant to see if there is a causal connection between the sexual violence and the misconduct that may have resulted in the complainant being disciplined.[32]

Remedies for the broader student population may include, but are not limited to:

- Designating an individual from the school's counseling center who is specifically trained in providing trauma-informed comprehensive services to victims of sexual violence to be on call to assist students whenever needed;

- Training or retraining school employees on the school's responsibilities to address allegations of sexual violence and how to conduct Title IX investigations;

- Developing materials on sexual violence, which should be distributed to all students;

- Conducting bystander intervention and sexual violence prevention programs with students;

- Issuing policy statements or taking other steps that clearly communicate that the school does not tolerate sexual violence and will respond to any incidents and to any student who reports such incidents;

---

[32] For example, if the complainant was disciplined for skipping a class in which the perpetrator was enrolled, the school should review the incident to determine if the complainant skipped class to avoid contact with the perpetrator.

- Conducting, in conjunction with student leaders, a campus climate check to assess the effectiveness of efforts to ensure that the school is free from sexual violence, and using that information to inform future proactive steps that the school will take;

- Targeted training for a group of students if, for example, the sexual violence created a hostile environment in a residence hall, fraternity or sorority, or on an athletic team; and

- Developing a protocol for working with local law enforcement as discussed in question F-3.

When a school is unable to conduct a full investigation into a particular incident (*i.e.*, when it received a general report of sexual violence without any personally identifying information), it should consider remedies for the broader student population in response.

**H-2. If, after an investigation, a school finds the alleged perpetrator responsible and determines that, as part of the remedies for the complainant, it must separate the complainant and perpetrator, how should the school accomplish this if both students share the same major and there are limited course options?**

**Answer:** If there are limited sections of required courses offered at a school and both the complainant and perpetrator are required to take those classes, the school may need to make alternate arrangements in a manner that minimizes the burden on the complainant. For example, the school may allow the complainant to take the regular sections of the courses while arranging for the perpetrator to take the same courses online or through independent study.

**H-3. What information must be provided to the complainant in the notice of the outcome?**

**Answer:** Title IX requires both parties to be notified, in writing, about the outcome of both the complaint and any appeal. OCR recommends that a school provide written notice of the outcome to the complainant and the alleged perpetrator concurrently.

For Title IX purposes, a school must inform the complainant as to whether or not it found that the alleged conduct occurred, any individual remedies offered or provided to the complainant or any sanctions imposed on the perpetrator that directly relate to the complainant, and other steps the school has taken to eliminate the hostile environment, if the school finds one to exist, and prevent recurrence. The perpetrator should not be notified of the individual remedies offered or provided to the complainant.

Sanctions that directly relate to the complainant (but that may also relate to eliminating the hostile environment and preventing recurrence) include, but are not limited to, requiring that the perpetrator stay away from the complainant until both parties graduate, prohibiting the perpetrator from attending school for a period of time, or transferring the perpetrator to another residence hall, other classes, or another school. Additional steps the school has taken to eliminate the hostile environment may include counseling and academic support services for the complainant and other affected students. Additional steps the school has taken to prevent recurrence may include sexual violence training for faculty and staff, revisions to the school's policies on sexual violence, and campus climate surveys. Further discussion of appropriate remedies is included in question H-1.

In addition to the Title IX requirements described above, the Clery Act requires, and FERPA permits, postsecondary institutions to inform the complainant of the institution's final determination and any disciplinary sanctions imposed on the perpetrator in sexual violence cases (as opposed to all harassment and misconduct covered by Title IX) not just those sanctions that directly relate to the complainant.[33]

## I. Appeals

### I-1.   What are the requirements for an appeals process?

**Answer:**  While Title IX does not require that a school provide an appeals process, OCR does recommend that the school do so where procedural error or previously unavailable relevant evidence could significantly impact the outcome of a case or where a sanction is substantially disproportionate to the findings. If a school chooses to provide for an appeal of the findings or remedy or both, it must do so equally for both parties. The specific design of the appeals process is up to the school, as long as the entire grievance process, including any appeals, provides prompt and equitable resolutions of sexual violence complaints, and the school takes steps to protect the complainant in the educational setting during the process. Any individual or body handling appeals should be trained in the dynamics of and trauma associated with sexual violence.

If a school chooses to offer an appeals process it has flexibility to determine the type of review it will apply to appeals, but the type of review the school applies must be the same regardless of which party files the appeal.

---

[33] 20 U.S.C. § 1092(f) and 20 U.S.C. § 1232g(b)(6)(A).

**I-2.** **Must an appeal be available to a complainant who receives a favorable finding but does not believe a sanction that directly relates to him or her was sufficient?**

**Answer:** The appeals process must be equal for both parties. For example, if a school allows a perpetrator to appeal a suspension on the grounds that it is too severe, the school must also allow a complainant to appeal a suspension on the grounds that it was not severe enough. See question H-3 for more information on what must be provided to the complainant in the notice of the outcome.

**J.** **Title IX Training, Education and Prevention**[34]

**J-1.** **What type of training on Title IX and sexual violence should a school provide to its employees?**

**Answer:** A school needs to ensure that responsible employees with the authority to address sexual violence know how to respond appropriately to reports of sexual violence, that other responsible employees know that they are obligated to report sexual violence to appropriate school officials, and that all other employees understand how to respond to reports of sexual violence. A school should ensure that professional counselors, pastoral counselors, and non-professional counselors or advocates also understand the extent to which they may keep a report confidential. A school should provide training to all employees likely to witness or receive reports of sexual violence, including teachers, professors, school law enforcement unit employees, school administrators, school counselors, general counsels, athletic coaches, health personnel, and resident advisors. Training for employees should include practical information about how to prevent and identify sexual violence, including same-sex sexual violence; the behaviors that may lead to and result in sexual violence; the attitudes of bystanders that may allow conduct to continue; the potential for revictimization by responders and its effect on students; appropriate methods for responding to a student who may have experienced sexual violence, including the use of nonjudgmental language; the impact of trauma on victims; and, as applicable, the person(s) to whom such misconduct must be reported. The training should also explain responsible employees' reporting obligation, including what should be included in a report and any consequences for the failure to report and the procedure for responding to students' requests for confidentiality, as well as provide the contact

---

[34] As explained earlier, although this document focuses on sexual violence, the legal principles apply to other forms of sexual harassment. Schools should ensure that any training they provide on Title IX and sexual violence also covers other forms of sexual harassment. Postsecondary institutions should also be aware of training requirements imposed under the Clery Act.

information for the school's Title IX coordinator. A school also should train responsible
employees to inform students of: the reporting obligations of responsible employees;
students' option to request confidentiality and available confidential advocacy,
counseling, or other support services; and their right to file a Title IX complaint with the
school and to report a crime to campus or local law enforcement. For additional
information on the reporting obligations of responsible employees and others see
questions D-1 to D-5.

There is no minimum number of hours required for Title IX and sexual violence training at
every school, but this training should be provided on a regular basis. Each school should
determine based on its particular circumstances how such training should be conducted,
who has the relevant expertise required to conduct the training, and who should receive
the training to ensure that the training adequately prepares employees, particularly
responsible employees, to fulfill their duties under Title IX. A school should also have
methods for verifying that the training was effective.

**J-2.   How should a school train responsible employees to report incidents of possible sexual
harassment or sexual violence?**

**Answer:**  Title IX requires a school to take prompt and effective steps reasonably
calculated to end sexual harassment and sexual violence that creates a hostile
environment (*i.e.*, conduct that is sufficiently serious as to limit or deny a student's ability
to participate in or benefit from the school's educational program and activity). But a
school should not wait to take steps to protect its students until students have already
been deprived of educational opportunities.

OCR therefore recommends that a school train responsible employees to report to the
Title IX coordinator or other appropriate school official any incidents of sexual harassment
or sexual violence that may violate the school's code of conduct or may create or
contribute to the creation of a hostile environment. The school can then take steps to
investigate and prevent any harassment or violence from recurring or escalating, as
appropriate. For example, the school may separate the complainant and alleged
perpetrator or conduct sexual harassment and sexual violence training for the school's
students and employees. Responsible employees should understand that they do not
need to determine whether the alleged sexual harassment or sexual violence actually
occurred or that a hostile environment has been created before reporting an incident to
the school's Title IX coordinator. Because the Title IX coordinator should have in-depth
knowledge of Title IX and Title IX complaints at the school, he or she is likely to be in a
better position than are other employees to evaluate whether an incident of sexual

harassment or sexual violence creates a hostile environment and how the school should respond. There may also be situations in which individual incidents of sexual harassment do not, by themselves, create a hostile environment; however when considered together, those incidents may create a hostile environment.

**J-3.   What type of training should a school provide to employees who are involved in implementing the school's grievance procedures?**

**Answer:** All persons involved in implementing a school's grievance procedures (*e.g.*, Title IX coordinators, others who receive complaints, investigators, and adjudicators) must have training or experience in handling sexual violence complaints, and in the operation of the school's grievance procedures. The training should include information on working with and interviewing persons subjected to sexual violence; information on particular types of conduct that would constitute sexual violence, including same-sex sexual violence; the proper standard of review for sexual violence complaints (preponderance of the evidence); information on consent and the role drugs or alcohol can play in the ability to consent; the importance of accountability for individuals found to have committed sexual violence; the need for remedial actions for the perpetrator, complainant, and school community; how to determine credibility; how to evaluate evidence and weigh it in an impartial manner; how to conduct investigations; confidentiality; the effects of trauma, including neurobiological change; and cultural awareness training regarding how sexual violence may impact students differently depending on their cultural backgrounds.

In rare circumstances, employees involved in implementing a school's grievance procedures may be able to demonstrate that prior training and experience has provided them with competency in the areas covered in the school's training. For example, the combination of effective prior training and experience investigating complaints of sexual violence, together with training on the school's current grievance procedures may be sufficient preparation for an employee to resolve Title IX complaints consistent with the school's grievance procedures. In-depth knowledge regarding Title IX and sexual violence is particularly helpful. Because laws and school policies and procedures may change, the only way to ensure that all employees involved in implementing the school's grievance procedures have the requisite training or experience is for the school to provide regular training to all individuals involved in implementing the school's Title IX grievance procedures even if such individuals also have prior relevant experience.

**J-4.   What type of training on sexual violence should a school provide to its students?**

**Answer:**  To ensure that students understand their rights under Title IX, a school should provide age-appropriate training to its students regarding Title IX and sexual violence. At the elementary and secondary school level, schools should consider whether sexual violence training should also be offered to parents, particularly training on the school's process for handling complaints of sexual violence. Training may be provided separately or as part of the school's broader training on sex discrimination and sexual harassment. However, sexual violence is a unique topic that should not be assumed to be covered adequately in other educational programming or training provided to students. The school may want to include this training in its orientation programs for new students; training for student athletes and members of student organizations; and back-to-school nights. A school should consider educational methods that are most likely to help students retain information when designing its training, including repeating the training at regular intervals. OCR recommends that, at a minimum, the following topics (as appropriate) be covered in this training:

- Title IX and what constitutes sexual violence, including same-sex sexual violence, under the school's policies;
- the school's definition of consent applicable to sexual conduct, including examples;
- how the school analyzes whether conduct was unwelcome under Title IX;
- how the school analyzes whether unwelcome sexual conduct creates a hostile environment;
- reporting options, including formal reporting and confidential disclosure options and any timeframes set by the school for reporting;
- the school's grievance procedures used to process sexual violence complaints;
- disciplinary code provisions relating to sexual violence and the consequences of violating those provisions;
- effects of trauma, including neurobiological changes;
- the role alcohol and drugs often play in sexual violence incidents, including the deliberate use of alcohol and/or other drugs to perpetrate sexual violence;
- strategies and skills for bystanders to intervene to prevent possible sexual violence;
- how to report sexual violence to campus or local law enforcement and the ability to pursue law enforcement proceedings simultaneously with a Title IX grievance; and
- Title IX's protections against retaliation.

The training should also encourage students to report incidents of sexual violence. The training should explain that students (and their parents or friends) do not need to determine whether incidents of sexual violence or other sexual harassment created a

hostile environment before reporting the incident. A school also should be aware that persons may be deterred from reporting incidents if, for example, violations of school or campus rules regarding alcohol or drugs were involved. As a result, a school should review its disciplinary policy to ensure it does not have a chilling effect on students' reporting of sexual violence offenses or participating as witnesses. OCR recommends that a school inform students that the school's primary concern is student safety, and that use of alcohol or drugs never makes the survivor at fault for sexual violence.

It is also important for a school to educate students about the persons on campus to whom they can confidentially report incidents of sexual violence. A school's sexual violence education and prevention program should clearly identify the offices or individuals with whom students can speak confidentially and the offices or individuals who can provide resources such as victim advocacy, housing assistance, academic support, counseling, disability services, health and mental health services, and legal assistance. It should also identify the school's responsible employees and explain that if students report incidents to responsible employees (except as noted in question E-3) these employees are required to report the incident to the Title IX coordinator or other appropriate official. This reporting includes the names of the alleged perpetrator and student involved in the sexual violence, as well as relevant facts including the date, time, and location, although efforts should be made to comply with requests for confidentiality from the complainant. For more detailed information regarding reporting and responsible employees and confidentiality, see questions D-1 to D-5 and E-1 to E-4.

## K.  Retaliation

### K-1.  Does Title IX protect against retaliation?

**Answer:**  Yes. The Federal civil rights laws, including Title IX, make it unlawful to retaliate against an individual for the purpose of interfering with any right or privilege secured by these laws. This means that if an individual brings concerns about possible civil rights problems to a school's attention, including publicly opposing sexual violence or filing a sexual violence complaint with the school or any State or Federal agency, it is unlawful for the school to retaliate against that individual for doing so. It is also unlawful to retaliate against an individual because he or she testified, or participated in any manner, in an OCR or school's investigation or proceeding. Therefore, if a student, parent, teacher, coach, or other individual complains formally or informally about sexual violence or participates in an OCR or school's investigation or proceedings related to sexual violence, the school is prohibited from retaliating (including intimidating, threatening, coercing, or in any way

discriminating against the individual) because of the individual's complaint or participation.

A school should take steps to prevent retaliation against a student who filed a complaint either on his or her own behalf or on behalf of another student, or against those who provided information as witnesses.

Schools should be aware that complaints of sexual violence may be followed by retaliation against the complainant or witnesses by the alleged perpetrator or his or her associates. When a school knows or reasonably should know of possible retaliation by other students or third parties, it must take immediate and appropriate steps to investigate or otherwise determine what occurred. Title IX requires the school to protect the complainant and witnesses and ensure their safety as necessary. At a minimum, this includes making sure that the complainant and his or her parents, if the complainant is in elementary or secondary school, and witnesses know how to report retaliation by school officials, other students, or third parties by making follow-up inquiries to see if there have been any new incidents or acts of retaliation, and by responding promptly and appropriately to address continuing or new problems. A school should also tell complainants and witnesses that Title IX prohibits retaliation, and that school officials will not only take steps to prevent retaliation, but will also take strong responsive action if it occurs.

**L.   First Amendment**

**L-1.   How should a school handle its obligation to respond to sexual harassment and sexual violence while still respecting free-speech rights guaranteed by the Constitution?**

**Answer:**  The DCL on sexual violence did not expressly address First Amendment issues because it focuses on unlawful physical sexual violence, which is not speech or expression protected by the First Amendment.

However, OCR's previous guidance on the First Amendment, including the 2001 Guidance, OCR's July 28, 2003, Dear Colleague Letter on the First Amendment,[35] and OCR's October 26, 2010, Dear Colleague Letter on harassment and bullying,[36] remain fully in effect. OCR has made it clear that the laws and regulations it enforces protect students from prohibited discrimination and do not restrict the exercise of any expressive activities or speech protected under the U.S. Constitution. Therefore, when a school works to prevent

---

[35] Available at http://www.ed.gov/ocr/firstamend.html.
[36] Available at http://www.ed.gov/ocr/letters/colleague-201010.html.

and redress discrimination, it must respect the free-speech rights of students, faculty, and other speakers.

Title IX protects students from sex discrimination; it does not regulate the content of speech. OCR recognizes that the offensiveness of a particular expression as perceived by some students, standing alone, is not a legally sufficient basis to establish a hostile environment under Title IX. Title IX also does not require, prohibit, or abridge the use of particular textbooks or curricular materials.[37]

## M.  The Clery Act and the Violence Against Women Reauthorization Act of 2013

**M-1. How does the Clery Act affect the Title IX obligations of institutions of higher education that participate in the federal student financial aid programs?**

**Answer:**  Institutions of higher education that participate in the federal student financial aid programs are subject to the requirements of the Clery Act as well as Title IX. The Clery Act requires institutions of higher education to provide current and prospective students and employees, the public, and the Department with crime statistics and information about campus crime prevention programs and policies. The Clery Act requirements apply to many crimes other than those addressed by Title IX. For those areas in which the Clery Act and Title IX both apply, the institution must comply with both laws. For additional information about the Clery Act and its regulations, please see http://www2.ed.gov/admins/lead/safety/campus.html.

**M-2. Were a school's obligations under Title IX and the DCL altered in any way by the Violence Against Women Reauthorization Act of 2013, Pub. L. No. 113-4, including Section 304 of that Act, which amends the Clery Act?**

**Answer:**  No. The Violence Against Women Reauthorization Act has no effect on a school's obligations under Title IX or the DCL. The Violence Against Women Reauthorization Act amended the Violence Against Women Act and the Clery Act, which are separate statutes. Nothing in Section 304 or any other part of the Violence Against Women Reauthorization Act relieves a school of its obligation to comply with the requirements of Title IX, including those set forth in these Questions and Answers, the 2011 DCL, and the *2001 Guidance*. For additional information about the Department's negotiated rulemaking related to the Violence Against Women Reauthorization Act please see http://www2.ed.gov/policy/highered/reg/hearulemaking/2012/vawa.html.

---

[37] 34 C.F.R. § 106.42.

Page 44 – Questions and Answers on Title IX and Sexual Violence

**N.  Further Federal Guidance**

**N-1.  Whom should I contact if I have additional questions about the DCL or OCR's other Title IX guidance?**

Answer:  Anyone who has questions regarding this guidance, or Title IX should contact the OCR regional office that serves his or her state. Contact information for OCR regional offices can be found on OCR's webpage at https://wdcrobcolp01.ed.gov/CFAPPS/OCR/contactus.cfm. If you wish to file a complaint of discrimination with OCR, you may use the online complaint form available at http://www.ed.gov/ocr/complaintintro.html or send a letter to the OCR enforcement office responsible for the state in which the school is located. You may also email general questions to OCR at ocr@ed.gov.

**N-2.  Are there other resources available to assist a school in complying with Title IX and preventing and responding to sexual violence?**

Answer:  Yes. OCR's policy guidance on Title IX is available on OCR's webpage at http://www.ed.gov/ocr/publications.html#TitleIX. In addition to the April 4, 2011, Dear Colleague Letter, OCR has issued the following resources that further discuss a school's obligation to respond to allegations of sexual harassment and sexual violence:

- Dear Colleague Letter: Harassment and Bullying (October 26, 2010), http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201010.pdf

- *Sexual Harassment: It's Not Academic* (Revised September 2008), http://www2.ed.gov/about/offices/list/ocr/docs/ocrshpam.pdf

- *Revised Sexual Harassment Guidance: Harassment of Students by Employees, Other Students, or Third Parties* (January 19, 2001), http://www2.ed.gov/about/offices/list/ocr/docs/shguide.pdf

In addition to guidance from OCR, a school may also find resources from the Departments of Education and Justice helpful in preventing and responding to sexual violence:

- Department of Education's Letter to Chief State School Officers on Teen Dating Violence Awareness and Prevention (February 28, 2013)
  https://www2.ed.gov/policy/gen/guid/secletter/130228.html

- Department of Education's National Center on Safe Supportive Learning Environments
  http://safesupportivelearning.ed.gov/

- Department of Justice, Office on Violence Against Women
  http://www.ovw.usdoj.gov/