## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK,

Amelia Roskin-Frazee

        Plaintiff,

v.

Columbia University,

        Defendant.

**Civil Action No.: 1:17-cv-02032-DAB**

**Judge: George Daniels**

**ECF CASE**

**Jury Trial Demanded**

Oral Argument Requested

## <u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT</u>

# TABLE OF CONTENTS

I.      INTRODUCTION…………………………………………………………1

II.     STATEMENT OF FACTS……………………………………………………2

III.    STANDARD FOR A RULE 12(B)(6) MOTION
        TO DISMISS……………………………………………………………4

IV.     THE INCORPORATION BY REFERENCE DOCTRINE
        IS INAPPLICABLE TO DEFENDANT'S PROFFERED
        EXTRINSIC EVIDENCE…………………………………………………5

V.      PLAINTIFF HAS PLED VIABLE TITLE IX CAUSES OF ACTION………9

        A.  Defendant's Post-Report Conduct Supports a Finding of Liability
            Under Title IX……………………………………………………10

                i.      *Defendant Acted With Deliberate Indifference By Failing
                        To Timely Investigate Plaintiff's Several Reports Of Sexual
                        Violence And By Failing To Timely Provide Plaintiff With
                        Reasonable Accommodations…………………………………*10

                ii.     *Defendant Acted With Deliberate Indifference By Failing To
                        Adhere To Its Own Policies For Responding To Reports Of
                        Sexual Misconduct…………………………………………*13

                iii.    *Defendant's Conduct Departed Significantly From The
                        Department of Education's Guidelines For Responding
                        To Knowledge Of Sexual Violence……………………………*14

        B.  Defendant's Pre-Assault General Policy of Indifference and
            Sexually Hostile Culture Supports a Finding of Liability Under
            Title IX…………………………………………………………18

VI.     PLAINTIFF HAS PLED VIABLE NEGLIGENCE AND
        GROSS NEGLIGENCE CAUSES OF ACTION………………………20

        A.  As The Landlord of Hartley Hall, Columbia Owed Plaintiff A
            Duty to Take Reasonable Measures to Prevent Injury Resulting
            From Foreseeable Criminal Attacks……………………………… 20

B.  By Taking No Action to Prevent Additional Assaults of Plaintiff –
Even After It Had Knowledge of the First Rape – Columbia Acted
With Gross Negligence……………………………………………….22

VII.    CONCLUSION………………………………………………………...23

# TABLE OF AUTHORITIES

**Cases**

*Alt. Energy , Inc. v. St. Paul Fire and Marine Ins. Co.*
    267 F.3d 30, 33 (1st Cir. 2001)……………………………………………..6

*Ashcroft v. Iqbal,*
    556 U.S. 662, 678 (2009)……………………………………………..4

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 555 (2007)……………………………………………..4

*Burgos v. Aqueduct Realty Corp.,*
92 N.Y.2d 544 (1998)………………………………………………………21

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147, 153 (2d Cir. 2002)…………………………………………..6

*Conley v. Gibson,*
    355 U.S. 41, 45-46 (1957)…………………………………………………5

*Cuvillier v. Taylor,*
    503 F.3d 397, 401 (5th Cir. 2007)……………………………………………4

*Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.,*
    526 U.S. 629, 648 (1999)………………………………………9,13,15,16,18

*DeCecco v. Univ. of S.C.*
    918 F.Supp.2d 471 (D.S.C. 2013)………………………………………12

*Doe 1 v. Baylor U.,*
    2017 WL 1831996, at *7 (W.D. Tex. Mar. 7, 2017)……………………………17

*Doe v. E. Haven Bd. of Educ.,*
    200 Fed. Appx. 46 (2d Cir. 2006)…………………………………………11

*Doe v. Forest Hills Sch. Dist.,*
    2015 WL 9906260, at pp. 9-11 (W.D. Mich. Mar. 31, 2015)……………………16

*Doe ex rel. Doe v. Dallas Indep. Sch. Dist.,*
    220 F.3d 380, 384 (5th Cir. 2000)…………………………………………10

*Franklin v. Gwinnett County Pub. Schools,*
    503 U.S. 60, 75 (1992)………………………………………………………5

*Gebser v. Lago Vista Indep. Sch. Dist.,*
 524 U.S. 274, 290 (1998)……………………………………………………18

*General Electric Co. v. Gilbert,*
 429 U.S. 125, 141–142, 97 S.Ct. 401, 410–11, 50 L.Ed.2d 343 (1976)……………16

*Giragosian v. Ryan,*
 547 F.3d 59, 65 (1st Cir. 2008)……………………………………………………5

*Griggs v. Duke Power Co.,*
 401 U.S. 424, 433–434, 91 S.Ct. 849, 855, 28 L.Ed.2d 158 (1971)………………16

*Jackson v. Birmingham Bd. of Educ.,*
 544 U.S. 167, 179 (2005)……………………………………………………5

*Jacqueline S. v. City of New York,*
 81 N.Y.2d 288 (1993)……………………………………………………21

*Jaghory v. New York State Dep't of Educ.,*
 131 F.3d 326, 329 (2d. Cir. 1997)……………………………………………………5

*Jane Doe A. v. Green,*
 298 F. Supp.2d 1025, 1036 (2004)……………………………………………………9

*Harrington v. State Farm Fire & Cas. Co.,*
 563 F.3d 141, 147 (5th Cir. 2009)……………………………………………………4

*Kelly v. Yale U.,*
 2003 WL 1563424 (D. Conn. Mar. 26, 2003)………………………………………10

*Leader v. Harvard U. Bd. of Overseers,*
 2017 WL 1064160, at *7 (D. Mass. Mar. 17, 2017)…………………………………17

*Levenstein v. Salafsky,*
 164 F.3d 345, 347 (7th Cir. 1998)……………………………………………………6

*Lilah R. ex. Rel. Elena A. v. Smith,*
 2011 WL 2976805, *5 (N.D.Cal. July 22, 2011)……………………………………10

*Lipsett v. U. of Puerto Rico,*
 864 F.2d 881, 896 (1st Cir. 1988)………………………………………………………16

*Meritor Sav. Bank, FSB v. Vinson,*
 477 U.S. 57 (1986)……………………………………………………………15,16

*McLain v. Real Est. Bd. of New Orleans, Inc.,*
    444 U.S. 232, 246 (1980)………………………………………………………..5

*Miller v. State,*
    62 N.Y.2d 506, 513 (1984)………………………………………………20,21,22

*Nieswand v. Cornell University,*
    692 F.Supp. 1464, 1467 (1988)……………………………………………….21

*North Haven Bd. of Educ. v. Bell,*
    456 U.S. 512, 521 (1982)…………………………………………………..5

*Pasquaretto v. Long Island University,*
    964 N.Y.S.2d 599, 601 (2013)………………………………………………..21

*Patterson v. Hudson Area Sch.,*
    551 F.3d 438, 450 (6th Cir. 2009)………………………………………………10

*Ryan v. IM Kapco, Inc.,*
    930 N.Y.S.2d 627, 629 (2011)………………………………………………..22

*Simpson v. U. of Colorado Boulder,*
    500 F.3d 1170 (10th Cir. 2007)………………………………………………18

*Skidmore v. Swift & Co.,*
    323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed.124 (1944)…………………………16

*Takla v. Regents of the U. of California,*
    2015 WL 6755190 (C.D. Cal. Nov. 2, 2015)……………………………………13,14

*Tubbs v. Stony Brook University,*
    2016 WL 8650463 (S.D.N.Y. Mar. 4, 2016)…………………………….6,7,8,11,19

*Turner v. Pleasant,*
    663 F.3d 770, 775 (5th Cir. 2011)…………………………………………......4

*U.S. v. Corinthian Colleges,*
    655 F.3d 984, 999 (9th Cir. 2011)……………………………………………….6

*United States v. Price,*
    383 U.S. 787, 801 (1966)…………………………………………………......5

*Walton v. Mercy College,*
    940 N.Y.S.2d 54 (2012)………………………………………………......…..21

*Williams v. Bd. of Regents of Univ. Sys. of Georgia*,
    477 F.3d 1282, 1297 (11th Cir. 2007).................................................10,18

*Williams v. Utica College of Syracuse University,*
    453 F.3d 112 (2006)........................................................................21

## I.       INTRODUCTION

This case arises out of multiple sexual assaults of Plaintiff, Ms. Roskin-Frazee, while she was a student at Defendant Columbia University ("Columbia").  In her Complaint, Ms. Roskin-Frazee has alleged several claims against Defendant, including that Defendant violated 20 U.S.C. § 1681 ("Title IX") both in creating a sexually hostile environment and culture at Columbia prior to her first rape, and in responding specifically to her reports of the two sexual assaults and subsequent harassment she experienced.  Further, Ms. Roskin-Frazee has alleged multiple state law negligence-based claims including Negligence, Premises Liability, and Gross Negligence.

In response to Ms. Roskin-Frazee's Complaint, Defendant has filed a Rule 12(b)(6) Motion to Dismiss the Complaint ("Motion") asserting that all of Plaintiff's causes of action must be dismissed.  In support of its Motion, Defendant also inappropriately filed several exhibits challenging the veracity of the allegations in Plaintiff's Complaint.  In filing its several exhibits with its Rule 12(b)(6) Motion, Defendant asks the Court to inappropriately step outside of Plaintiff's Complaint, and consider extrinsic evidence, thus effectively turning Defendant's Motion to Dismiss into a one-sided Motion for Summary Judgment.  What's more, Defendant asks this Court to simply accept the credibility of Defendant's submitted evidence, absent all process for ensuring the credibility of evidence.[1]  Regardless of this impropriety, it cannot be argued that Plaintiff has not plausibly alleged violation of Title IX and state negligence laws.

Plaintiff has alleged several facts that evidence the rampant sexual misconduct committed at Columbia, and Columbia's failure to meaningfully address it.  Further, Plaintiff has alleged that in response to Plaintiff's specific reports of sexual assault, Defendant failed to initiate a timely investigation, failed to provide safety measures to ensure Plaintiff's safety on campus, failed to

---

[1] Concurrently with Plaintiff's opposition to Defendant's Motion, Plaintiff has filed an objection to the entirety of Defendant's declaration, and accompanying exhibits.

provide reasonable housing and academic accommodations, and violated several of its own policies for responding to reports of sexual misconduct. Moreover, Plaintiff has alleged that Defendant failed to adhere to the Department of Education's ("DOE") requirements for responding to reports of sexual misconduct. Additionally, Plaintiff has alleged several duties owed to her by Defendant both as her educational institution and landlord. Plaintiff has further alleged that Defendant breached those duties, which caused her severe physical and emotional damages.

Given these allegations, Plaintiff has plausibly stated a claim for damages under Title IX and state negligence laws. Accordingly, Defendant's Motion should be denied.

## II.     STATEMENT OF FACTS

Plaintiff was first raped in her dorm room on October 5, 2015. (Complaint ¶ 29.) Within days, Plaintiff sought assistance from Defendant's Women's Health Department, Sexual Violence Response Hotline through staff and a staff advocate, Counseling and Psychological Services, Disability Services Office, her Academic Advisor, and her Residential Advisor. (*Id.* ¶¶ 30-40.) Despite these substantial efforts, Plaintiff was not provided any instruction on her rights or accommodations available to her under Title IX, was denied access to necessary medical services, and was denied both reasonable housing and academic accommodations. (*Id.* ¶¶ 33, 35, 36, 39, 42.) The lack of housing accommodation is particularly egregious, as it would lead directly to a second violent sexual assault only months later. The entirety of Defendant's initial response to Plaintiff's report that she was raped was to inform Plaintiff of her right to call the police and to have a Residential Advisor conduct a five minute "wellness check." (*Id.* ¶¶ 32, 41.) Later, on December 3, 2015, Plaintiff reported her rape to the Executive Vice President for University Life, Suzanne Goldberg ("Goldberg"). (*Id.* ¶ 44.) She also reported to Goldberg the difficulties she had experienced with Columbia administrators and agencies while seeking help and accommodations

following her rape. (*Id.*) In response, despite her obligation to report Plaintiff's rape to the appropriate Columbia offices, Goldberg did nothing. (*Id.* 45-46.)

Sadly, though predictably, after Columbia's failure to take any reasonable measures to respond to Plaintiff's initial rape or provide any reasonable accommodations to ensure her safety on campus, Plaintiff was violently sexually assaulted again, in her same dorm room. (*Id.* ¶ 47.) Not only did Columbia's lack of response to Plaintiff's initial rape make Plaintiff vulnerable to being sexually assaulted again, it also subjected Plaintiff to additional harassment. After her second sexual assault, two notes were posted on the community bulletin board in Plaintiff's dorm, reading: "Isn't it fun to wake up to someone fucking you?" and "I'll buy you a new phone charger." (*Id.* ¶¶ 53-54.) Both notes were in reference to Plaintiff's sexual assaults.

On August 5, 2016, Plaintiff formally reported her sexual assaults to Columbia. (*Id.* ¶ 55.) In response, Plaintiff received a letter indicating that Columbia would not investigate her reports because she could not identify her perpetrator, which was in direct violation of Columbia's policies. (*Id.* ¶ 56.) After Plaintiff persisted, Columbia finally initiated an investigation on September 8, 2016, almost a year after Plaintiff first reported her initial rape. (*Id.* ¶ 58.) Plaintiff also requested that certain safety measures be implemented for her protection, including the installment of locks on her suite door. (*Id.* ¶ 60.) In response to her request, Plaintiff met with Jeri Henry, the Assistant Vice President of Columbia's Student Conduct and Community Standards Office ("SCCS"), and a represented from Columbia's Office of Public Safety. (*Id.* ¶ 62.) During the meeting, Henry asked Plaintiff if she still even wanted to be a student at Columbia given her public criticisms of Columbia and, "how [Plaintiff] interacts with the Columbia community." (*Id.*) Columbia did not honor her request for security measures at that time.

On September 16, 2016, almost a year after her first rape, Plaintiff was finally given the

option to move off campus or have locks installed on her suite door – she chose the latter. (*Id.* ¶ 63.) On October 7, 2016, Plaintiff received notice that Columbia completed its investigation into her sexual assaults. (*Id.* ¶ 64.) As part of its "investigation," which lasted only 26 days, Columbia did not conduct a single interview, did not review the swipe logs for her dormitory on the nights of her assaults, and could not review security camera footage due to the length of time that had elapsed since her assaults, though had Columbia initiated a timely investigation, the security camera footage would have been available. (*Id.*)

## III.    STANDARD FOR A RULE 12(B)(6) MOTION TO DISMISS

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the [plaintiff's] grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)); *See also Lorman v. US Unwired, Inc.* 565 F.3d 228, 232 (5th. Cir. 2009). "It is axiomatic that a complaint not be dismissed unless 'it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *McLain v. Real Est. Bd. of New Orleans, Inc.*, 444 U.S. 232, 246 (1980) *quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In that consideration, the court must accept all factual allegations in

the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff. *Jaghory v. New York State Dep't of Educ.,* 131 F.3d 326, 329 (2d. Cir. 1997).

Specifically, with respect to Title IX, the Supreme Court has recognized that, "[t]he statute is broadly worded." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 179 (2005).  Hence, "[t]here is no doubt that 'if we are to give [Title IX] the scope that its origins dictate, we must accord it a sweep as broad as its language.'" *North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 521 (1982) (quoting *United States v. Price*, 383 U.S. 787, 801 (1966).  Further, "[d]iscrimination is a term that covers a wide range of intentional unequal treatment; by using such a broad term, Congress gave the statute a broad reach." *Jackson*, 544 U.S. at 175 (internal quotations omitted).

"Congress enacted Title IX not only to prevent the use of federal dollars to support discriminatory practices, but also to provide individual citizens effective protection against those practices." *Jackson*, 544 U.S. at 180 (internal quotations omitted.)  "Congress surely did not intend for federal moneys to be expended to support the intentional actions it sought by statute to proscribe." *Franklin v. Gwinnett County Pub. Schools*, 503 U.S. 60, 75 (1992).

## IV.     THE INCORPORATION BY REFERENCE DOCTRINE IS INAPPLICABLE TO DEFENDANT'S PROFFERED EXTRINSIC EVIDENCE

Generally, when ruling on a Rule 12(b)(6) motion to dismiss, a district court is limited to the facts alleged in the complaint. *Giragosian v. Ryan,* 547 F.3d 59, 65 (1st Cir. 2008).  However, there are some exceptions to this rule.  Relevant here, a court may consider external documents that are incorporated by reference in a complaint. *Id.*  In order for extrinsic evidence to be considered on a Rule 12(b)(6) motion, the evidence must meet several requirements.  First a court may consider extrinsic evidence on a Rule 12(b)(6) motion if the complaint necessarily relies on such evidence. *Alt. Energy , Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001); *U.S. v. Corinthian Colleges,* 655 F.3d 984, 999 (9th Cir. 2011); *See also Chambers v. Time*

*Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002) ("[w]e reiterate here that a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough.")

Notably, however, "While documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim, this is a narrow exception aimed at cases interpreting, for example, a contract." *Levenstein v. Salafsky,* 164 F.3d 345, 347 (7th Cir. 1998) (internal citations omitted).  The incorporation by reference doctrine "…is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment." *Id.*

If a complaint does not reference extrinsic evidence, then the inquiry is over and the court may not consider the extrinsic evidence on a Rule 12(b)(6) motion.  If the complaint does reference extrinsic evidence, then a court may consider it on a Rule 12(b)(6) motion only if, "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Corinthian Colleges*, 655 F.3d at 999.  As recognized by the Southern District of New York, "A document is not 'central' simply because its contents are highly relevant to plaintiff's allegations, but only when it is clear that the plaintiff relied on the document in preparing his complaint." *Tubbs v. Stony Brook University*, 2016 WL 8650463 (S.D.N.Y. Mar. 4, 2016) *citing Williams v. City of New York,* WL 4461716 (S.D.N.Y. 2015).  In *Tubbs,* the defendant university filed a Rule 12(b)(6) motion to dismiss the plaintiff's Title IX lawsuit, along with twenty-one exhibits in support. *Id.* at *5.  In refusing to consider the defendant's exhibits, the court stated:

> The Court similarly cannot find that the remaining exhibits are integral to the Complaint. The exhibits do trace the evolution of Plaintiff's complaint and expand on many of her

> allegations. However, this expansion does not make the exhibits proper on a motion to dismiss, where only documents that can be considered incorporated or integral are taken into consideration. In essence, the University Defendants ask the Court to weigh evidence that tends to disprove (or expand upon) Plaintiff's allegations. The Court will not entertain such an exercise, which is clearly improper on a motion to dismiss.

*Id.* at \*5-6.

The Court further stated:

> More specifically, though many of the exhibits are generally referenced in the Complaint, it cannot be said that such documents are integral to (i.e., that Plaintiff must have relied heavily on their terms and effects in drafting) the Complaint. For example, exhibits 2-4 are Plaintiff's Sexual Assault Reporting forms and her official statement to the police. In her Complaint, Plaintiff does allege that she made such a statement and signed these forms. However, these allegations do not rely on or require knowledge of the contents of the proposed exhibits. Similarly, Plaintiff alleges that a hearing occurred and that she was required to represent herself at such hearing. Based on these allegations, the University Defendants contend that the hearing transcript is integral to the Complaint. Not so. On the contrary, the hearing transcript is evidence tending to prove or disprove Plaintiff's allegations; consideration of such evidence is wholly improper on a motion to dismiss, where the inquiry is limited to whether Plaintiff's allegations, accepted as true, state a claim as a matter of law. The same is true for the remaining exhibits: it cannot be said that Plaintiff relied heavily on their terms and effects—essentially their content—in drafting the complaint, simply because the Complaint makes general reference to the documents.

*Id.* (internal citations omitted.)

Ultimately, in determining whether the defendant acted with deliberate indifference following the alleged assault, as is required in a Title IX liability analysis, the court indicated, "[Defendants] argue that 'Plaintiff simply has failed to plead, as a matter of law, a plausible claim that SUNY was deliberately indifferent'…However, University Defendants' support for this claim lies exclusively in the extrinsic evidence submitted in their motion and the Court will not consider such evidence." *Id.* at p. 7.

Here, in support of its Motion, Defendant similarly relies almost exclusively on the content of extrinsic evidence filed with its Motion. Thus, as in *Tubbs* in which the court refused to incorporate the various exhibits by reference into the plaintiff's complaint, here too, this Court

should refuse to incorporate by reference the exhibits filed by Defendant.  The majority of the exhibits are not referenced in Plaintiff's Complaint at all, and therefore cannot be deemed incorporated by reference.  Moreover, those exhibits that are mentioned in Plaintiff's Complaint are not "central" or "integral" to Plaintiff's claims, nor has their authenticity been verified by Plaintiff.

Most problematic, by including these various exhibits, Defendant is not asking this Court to incorporate by reference the content of the documents in question, but rather, incorporate by reference Defendant's limited presentation and subjective interpretation of these documents' contents.  In other words, Defendant seeks to disprove Plaintiff's allegations with extrinsic evidence – a strategy that was summarily rejected by the court in *Tubbs*.  For example, Defendant's presentation of Exhibits 10 and 13 states: "But the contemporaneous record of those communications contradicts Plaintiff's allegations, and makes clear that the investigators did everything possible under the circumstances." (Defendant's Motion at p. 14.)  Here, Defendant improperly asks the Court to make a factual determination with limited context based on Defendant's unilateral presentation of evidence, and skewed explanation as to why more was not done to investigate Plaintiff's claims.  This is the exact request the *Tubbs* court refused to indulge.  The meaning, purpose, and intent of the information contained in the documents are best left determined during discovery where the parties will have an opportunity to obtain all necessary information and not be restricted to Defendant's limited and self-serving presentation.  Further, Plaintiff will have the opportunity to examine relevant witnesses and introduce other evidence, such as expert testimony, to support or refute the parties' respective interpretations.

For the foregoing reasons, this Court should refuse to consider any evidence filed in support of Defendant's Motion, and should similarly refuse to consider any factual allegations included in

Defendant's Motion that were derived from any extrinsic evidence.[2]

## V.    Plaintiff has Pled Viable Title IX Causes of Action

In order for an educational institution to be held liable under Title IX, a plaintiff must prove: (1) the educational institution is the recipient of federal funding, (2) the institution acted with deliberate indifference, (3) to sexual harassment/assault of which they had actual knowledge, (4) that is so severe, pervasive, and objective offensive so as to deprive the victim of access to the educational opportunities and/or benefits provided by the school.  *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999).  Specifically, Plaintiff's Complaint plausibly supports findings of liability under Title IX based on (1) Defendant's sexually hostile environment and culture arising from its general policy of indifference to sexual violence on campus and intentional violation of Title IX, and (2) Defendant's deliberate indifference after each of Plaintiff's sexual assaults.

An institution acts with "deliberate indifference" when its response to known sexual harassment or sexual assault is "...clearly unreasonable in light of the known circumstances." *Davis,* 526 U.S. at 629.  Because this standard "does not lend itself well to a determination by the Court on summary judgment," courts have permitted Title IX claims to go to juries if some evidence supports a finding of indifference.  *See Jane Doe A. v. Green,* 298 F. Supp.2d 1025, 1036 (2004).  Whether an educational institution acted with deliberate indifference is generally a question of fact.  *See Doe v. Forest Hills Sch. Dist.*, 2015 WL 9906260, at pp. 9-11 (W.D. Mich. Mar. 31, 2015) ("Deliberate indifference is a fact sensitive inquiry"); *Patterson v. Hudson Area Sch.,* 551 F.3d 438, 450 (6th Cir. 2009) (plaintiffs "demonstrated that there is a genuine issue of material fact as to whether Hudson's responses to DP's reported student-on-student sexual

---

[2] Plaintiff concedes that she relied on Defendant's Gender-Based Misconduct Policy and Procedures For Students while drafting her Complaint, and therefore does not challenge the incorporation of this document by reference.

harassment were clearly unreasonable"); *Lilah R. ex. Rel. Elena A. v. Smith,* 2011 WL 2976805, *5 (N.D.Cal. July 22, 2011) ("Generally deliberate indifference is a fact-intensive inquiry and is often a question for the jury's determination"); *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.,* 220 F.3d 380, 384 (5th Cir. 2000) ("…determining what constitutes appropriate remedial action…in Title IX cases 'will necessarily depend on the particular facts of the case…'")  Here, when taken as true, all facts and inferences drawn from Plaintiff's Complaint raise a question of fact as to whether Defendant acted with deliberate indifference to (1) Plaintiff's reports of sexual assault, and (2) the known problem of sexual violence on campus prior to Plaintiff's assaults.

A.  Defendant's Post-Report Conduct Supports a Finding of Liability Under Title IX

Defendant's Motion is based entirely on the assertion that it did not act with deliberate indifference to Plaintiff's several reports that she was raped and sexually assaulted in her Columbia dorm room.  (Defendant's Motion at p. 16.)  In support, Defendant relies almost entirely on improper, extrinsic evidence filed with its Motion.  The impropriety of Defendant's evidence notwithstanding, Plaintiff's Complaint sets forth more than ample allegations to raise a question of fact regarding Defendant's post-assault deliberate indifference.

i.  *Defendant Acted With Deliberate Indifference By Failing To Timely Investigate Plaintiff's Several Reports Of Sexual Violence And By Failing To Timely Provide Plaintiff With Reasonable Accommodations*

Several courts have opined as to conduct that amounts to post-assault deliberate indifference.  *See Kelly v. Yale U.,* 2003 WL 1563424 (D. Conn. Mar. 26, 2003) (finding deliberate indifference where school engaged in a prompt grievance procedure but failed to provide reasonable accommodations to the victim); *Williams v. Bd. of Regents of Univ. Sys. of Georgia,* 477 F.3d 1282, 1297 (11th Cir. 2007) (recognizing an eleven-month delay in conducting an investigatory process was clearly unreasonable); *Doe v. E. Haven Bd. of Educ.,* 200 Fed. Appx. 46

(2d Cir. 2006) (recognizing that a five-week delay in addressing a report of sexual assault supported a finding of deliberate indifference); *Tubbs,* 2016 WL 8650463 at *7.

In *Tubbs,* the Court found the following sufficient to raise a question of fact as to the defendant's post-assault deliberate indifference:

> Specifically, Plaintiff alleges a number of instances of misconduct that a reasonable jury could conclude were clearly unreasonable in light of the circumstances, including (1) campus police did not explain Tubbs' options to her or take photographs of her bruising stemming from the alleged assault, (2) CSO and Orlich failed to notify Tubbs' professors of her ongoing hardship, despite their offer to do so, (3) CSO took over 3 months to complete an investigation and hold a disciplinary hearing, (4) Tubbs was required to present her case and question her attacker in the middle of her final exam period, and (5) Tubbs was not allowed to have her therapist present at the proceeding for emotional and mental support.

*Tubbs,* 2016 WL 8650463 at *7.

As in *Tubbs* as well as the other aforementioned authorities, Plaintiff's allegations here raise a question of fact as to whether Defendant's post-assault conduct amounted to deliberate indifference.  Plaintiff has alleged that Columbia: (1) waited almost a year after receiving knowledge of Plaintiff's initial rape to initiate an investigation, (2) failed to provide any measures to ensure Plaintiff's safety and well-being after she was raped which contributed to Plaintiff being sexually assaulted in her same dorm room again, (3) failed to provide Plaintiff with reasonable housing accommodations which also contributed to Plaintiff being sexually assaulted in her same dorm room again, (4) failed to provide Plaintiff with reasonable academic accommodations, (5) refused to investigate Plaintiff's reports of sexual misconduct because she could not identify her assailant, and (6) violated its own policies for responding to reports of sexual misconduct.  Taken in the light most favorable to Plaintiff, on these facts, a reasonable jury could find that Defendant acted with deliberate indifference and Defendant's Motion must be denied.

Despite speaking to no less than seven of Defendant's representatives about her rape in the

days following and no less than eight by early December, Defendant argues that it was not on sufficient notice of Plaintiff's first rape in order to trigger any obligations under Title IX.  In support, Defendant cites *DeCecco v. Univ. of S.C.* 918 F.Supp.2d 471 (D.S.C. 2013).  However, *DeCecco* was decided on a motion for summary judgment, after the parties had engaged in full discovery.  *Id.* at 477.  In fact, the *DeCecco* court relied on specific pieces of evidence procured in discovery in support of its conclusion that the defendant was not on notice of the plaintiff's report. *Id.* at 492-494.  On the other hand, here, Plaintiff has alleged that Defendant was on actual notice of her first rape because she strongly alluded to her academic advisor in October of 2014 that she had been raped, and her academic advisor was so concerned that she forwarded Plaintiff's report to her superior.  The reasonable inference to be drawn from these facts is that Plaintiff's academic advisor understood that Plaintiff had been sexually assaulted.  However, even if there was ambiguity with respect to Plaintiff's report to her academic advisor, Defendant's position must fail because Plaintiff explicitly reported her rape to Goldberg, a Columbia administrator, in December of 2015.

To get around this fact, Defendant argues that based on its school policy, Plaintiff's report to the administrator was not an official "report" in the eyes of Defendant because it was made in the context of a student advocacy forum.  However, an educational institutions' subjective policy for determining what is or is not a report is immaterial to a finding of actual notice.  Rather, as both *Davis* and its progeny, and the DOE have recognized, a school need only have actual knowledge of sexual violence in order to trigger its responsibility to respond to such violence. *Davis*, 526 U.S. at 648; DCL at pg. 4.  Moreover, the same policy that Defendant relies on to argue that Plaintiff's report was not an official "report" sufficient to trigger any response, also required

any non-confidential Columbia employee[3] to immediately report any knowledge of sexual misconduct to Columbia's Gender-Based Misconduct Office or its Title IX Coordinator regardless if the victim wished to report or not. (Compl. ¶ 21.) Thus, even if Plaintiff's report to Goldberg was not an official "report" according to Columbia's policy, the Supreme Court, the Department of Education, and Columbia's own policy recognize that Plaintiff's various reports to several Columbia representatives still triggered Columbia's responsibility to take action in response.

Based on Plaintiff's post-assault allegations, there exists a question of fact as to whether Defendant acted clearly unreasonably in response to Plaintiff's reports of sexual misconduct. Defendant cannot, at this stage, rely on extrinsic evidence to argue otherwise. Accordingly, Defendant's Motion must be denied.

> ii.   *Defendant Acted With Deliberate Indifference By Failing To Adhere To Its Own Policies For Responding To Reports Of Sexual Misconduct*

Defendant's position that it did not act with deliberate indifference in response to Plaintiff's reports of sexual violence is significantly undermined by its failure to adhere to its own policies when responding to Plaintiff's reports of sexual violence. *See Takla v. Regents of the U. of California,* 2015 WL 6755190 (C.D. Cal. Nov. 2, 2015) (denying a university's Rule 12(b)(6) motion, in part, because the defendant's deviation from its own policies raised a question of fact with respect to the reasonableness of the university's response to a report of sexual misconduct.)

Here, Columbia's Gender-Based Misconduct Policy and Procedures For Students (the "Policy") outlined the requirements for Columbia and its administrators to respond to reports of sexual misconduct on campus. (Compl. ¶ 20.) The Policy required Columbia personnel to: (1) report any knowledge of sexual misconduct to the Gender-Based Misconduct Office or Title IX Coordinator regardless of the victim's desire to formally report, (2) investigate and respond to the

---

[3] Goldberg was a non-confidential employee.

report of sexual violence, (3) report the sexual misconduct to Campus Public Safety, (4) take steps to ensure a victim's safety and promote their well-being throughout campus, (5) make certain accommodations available, including moving a student's residence, changing their academic schedule, allowing them to withdraw or retake classes without penalty, and provide access to tutoring and other academic support, (6) investigate reports of sexual misconduct even if the victim is unable to identify their perpetrator.  (Compl. ¶¶ 21-26.)

As in *Takla*, in which the court held that a plaintiff's allegations that an educational institution's violation of its own policies in responding to a report of sexual misconduct was sufficient to defeat a motion to dismiss, here too, Plaintiff's allegations create a question of fact as to whether Defendant's virtual wholesale departure from its own sexual misconduct policies amounts to conduct that is "clearly unreasonable in light of the known circumstances." Accordingly, this Court should decline to rule on this point as a matter of law, and deny Defendant's Motion.

> iii.   *Defendant's Conduct Departed Significantly From The Department of Education's Guidelines For Responding To Knowledge Of Sexual Violence*

The DOE is authorized by Congress to interpret, implement, and enforce Title IX. 20 U.S.C. § 1682.  In that role, the DOE has published several guidance documents that inform educational institutions, as well as the public, about the DOE's requirements for responding to knowledge of sexual violence on campus.  Specifically, the DOE's Office for Civil Rights has published The Dear Colleague Letter of 2011 ("DCL") and Questions and Answers on Title IX and Sexual Violence ("Questions and Answers"), both of which outline the DOE's requirements for responding to knowledge of sexual misconduct on campus.  In response to knowledge of sexual misconduct, the DOE requires an educational institution to: (1) "…take immediate action to eliminate the harassment, prevent its recurrence, and address its effects" (DCL at pg. 4); (2)

"…take immediate and appropriate steps to investigate or otherwise determine what occurred…" (Questions and Answers at pg. 2); (3) take prompt steps to protect the complainant and ensure their safety once it has notice of a sexual violence allegation (*Id.* at pg. 3); and (4) "…ensure that the complainant is aware of any available resources, such as victim advocacy, housing assistance, academic support, counseling, disability services, health and mental health services, and legal assistance, and the right to report a crime to campus or local law enforcement." (*Id.*) Further, once a school receives knowledge of sexual misconduct, the DOE expects an investigation to be completed within sixty days. (DCL at pg. 12.) Here, Columbia's wholesale deviation from the DOE's requirements is further evidence of its deliberate indifference to Plaintiff's multiple sexual assaults, and raises a question of fact as to the reasonableness of Defendant's conduct.

The Supreme Court has consistently looked to, and found support in agency guidelines promulgated by the agency charged with enforcing a given statute. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986); *Davis*, 526 U.S. at 647-48. In *Meritor*, the Court was asked to determine whether a claim of a sexually hostile work environment was actionable under Title VII as a form of prohibited sex discrimination.[4] *Meritor*, 477 U.S. at 59. In support of its holding that the creation of a sexually hostile work environment qualified as sex discrimination for purposes of Title VII, the Court relied on guidelines, similar in nature to those published by the DOE, promulgated by the Equal Employment Opportunity Commission. *Id.* at 65. In doing so, the Court specifically stated:

> As an "administrative interpretation of the Act by the enforcing agency," *Griggs v. Duke Power Co.,* 401 U.S. 424, 433–434, 91 S.Ct. 849, 855, 28 L.Ed.2d 158 (1971), these Guidelines, " 'while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance,' " *General Electric Co. v. Gilbert,* 429 U.S. 125, 141–142, 97

---

4 Title IX has consistently been interpreted based on the principles governing Title VII. *Lipsett v. U. of Puerto Rico,* 864 F.2d 881, 896 (1st Cir. 1988).

S.Ct. 401, 410–11, 50 L.Ed.2d 343 (1976), quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed.124 (1944). The EEOC Guidelines fully support the view that harassment leading to noneconomic injury can violate Title VII.

*Id. See also Lipsett v. U. of Puerto Rico,* 864 F.2d 881, 896 (1st Cir. 1988) (relying in part on EEOC guidelines to hold that the disparate treatment standard recognized by Title VII also applies to claims made in the mixed employment-training context under Title IX.)

The Court in *Davis* also cited DOE guidelines to support its holding that an educational institution could be liable in a private right of action under Title IX for student-on-student sexual harassment. *See Davis*, 526 U.S. at 647 ("Likewise, although they were promulgated too late to contribute to the Board's notice of proscribed misconduct, the Department of Education's Office for Civil Rights (OCR) has recently adopted policy guidelines providing that student-on-student harassment falls within the scope of Title IX's proscriptions.")

Several lower courts have similarly recognized that the failure to adhere to the various DOE guidance documents is a factor a court can consider to assess the reasonableness of an educational institution's response to sexual misconduct. *See Doe v. Forest Hills Sch. Dist.*, 2015 WL 9906260, at *10 (W.D. Mich. Mar. 31, 2015) ("Finally, the school clearly did not comply with Title IX guidance in its investigation…Although failure to comply with Title IX guidance does not, *on its own,* constitute deliberate indifference, it is one consideration") (emphasis in original); *Butters v. James Madison Univ.*, 208 F.Supp.3d 745, 757 (W.D. Va. 2016) (recognizing that many courts have held that "a school's compliance ... with the [Dear Colleague Letter] can be a factor that the court considers"); *Doe 1 v. Baylor U.*, 2017 WL 1831996, at *7 (W.D. Tex. Mar. 7, 2017) ("While the Court agrees that a school's failure to comply with certain DOE guidelines generally cannot, alone, demonstrate a school's deliberate indifference, it also agrees with numerous courts that DOE regulations may still be consulted when assessing the appropriateness of a school's response to reports of sexual assault") (internal citations omitted); *Leader v. Harvard*

16

*U. Bd. of Overseers*, 2017 WL 1064160, at *7 (D. Mass. Mar. 17, 2017) ("While the Court agrees that Leader may not rest her theory of liability upon Harvard's failure to abide by those guidance documents, such documents may at least inform the reasonableness of choices made by Harvard in responding to Leader's complaints"); Bleiler v. Coll. of Holy Cross, 2013 WL 4714340, at *5 (D. Mass. Aug. 26, 2013) (noting that the guidance in the DCL "does not have independent force of law but informs this Court's evaluation of whether the College's procedures were 'equitable'".)

Here, Plaintiff has alleged that in responding to Plaintiff's several reports that she was sexually assaulted on campus, Columbia significantly violated the requirements set forth in both the DCL and Questions and Answers.   (Complaint ¶ 75.)   Unquestionably, the "known circumstances" to Columbia at the time of Plaintiff's reports included the DOE's requirements for compliance with Title IX.  As the several aforementioned authorities make clear, though Plaintiff's allegations concerning Defendant's deviations from federal guidance do not, in and of themselves, establish deliberate indifference as a matter of law, at the very least, they raise a question of fact as to whether Columbia acted reasonably in light of the known circumstances.  Accordingly, this Court should deny Defendant's Motion.

**B.** Defendant's Pre-Assault General Policy of Indifference and Sexually Hostile Culture Supports a Finding of Liability Under Title IX

In its Motion, Defendant fails to address Plaintiff's first cause of action for Discrimination Under Title IX: Sexually Hostile Culture.  Therefore, Plaintiff's first cause of action must survive. Nevertheless, if Defendant chooses to challenge it on Reply, Plaintiff's allegations support such a finding.

An educational institution is liable under Title IX, even absent actual knowledge and deliberate indifference to a report of sexual misconduct, if that institution demonstrates a general policy of indifference to sexual misconduct on campus or intentionally violates Title IX.  *See*

*Davis,* 526 U.S. at 642 (the actual notice requirement, "…is not a bar to liability where a funding recipient intentionally violates the statute"); *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 290 (1998) ("…in cases like this one *that do not involve official policy of the recipient entity*, we hold that a damages remedy will not lie under Title IX…" absent an institution's actual notice of sexual misconduct) (emphasis added).  Several courts have held that conduct pre-dating a victim's individual instance of misconduct can nevertheless support liability under Title IX.  *See Williams v. Bd. of Regents of U. System of Georgia,* 477 F.3d 1282 (11th Cir. 2007) (holding that a university is liable under Title IX when it admits a student-athlete with knowledge of that athlete's prior sexual misconduct, and fails to adequately supervise him prior to his commission of sexual violence); *Simpson v. U. of Colorado Boulder,* 500 F.3d 1170 (10th Cir. 2007) (holding that a university is liable under Title IX for conduct pre-dating an individual instance of sexual violence when it fails to adequately respond to a known problem of sexual violence within a particular university program.)

Particularly instructive here are the courts' decisions in *Tubbs* and *Doe 1*.  In *Tubbs*, the court considered whether systematic deliberate indifference to sexual misconduct on campus pre-dating the victim's individual instance of sexual misconduct could support liability under Title IX.  *Tubbs,* 2016 WL 8650463 at *7-9.  The court held that the plaintiff's pre-assault Title IX claim could not be dismissed because the plaintiff had alleged that the university was aware of a significant amount of sexual misconduct on campus, failed to remedy its flawed policies, and had been investigated by the DOE's Office for Civil Rights ("OCR") and failed to implement the changes agreed to at the conclusion of the OCR's investigation.  *Id.* at *9.

Similarly, in *Doe 1* the court held that a university's pre-assault conduct could support a finding of liability under Title IX by creating a "heightened risk" for sexual misconduct on campus.

*Doe 1*, 2017 WL 1831996 at *9.  Specifically, the court recognized that a reasonable jury could find that the defendant university violated Title IX by (1) repeatedly misinforming victims of their rights under Title IX, (2) failing to investigate reports of sexual misconduct, (3) discouraging victims from naming their assailants or coming forward, and (4) failing to report instances of sexual misconduct on campus to the DOE as required by law.  *Id.*

Like in *Tubbs* and *Doe 1*, Plaintiff here has pled ample facts that plausibly support a finding of Title IX liability for Defendant's conduct pre-dating Plaintiff's assaults.  Specifically, Plaintiff has alleged that (1) close to thirty administrative complaints have been filed by Columbia students with the OCR, claiming Columbia failed to comply with the DOE requirements in responding to each victim's report of sexual misconduct, (2) Columbia pressured victims not to report their sexual misconduct, (3) disciplinary proceedings were held by administrators with no training, (4) disciplinary proceedings unfairly favored the accused over the accusers, (5) Columbia failed to provide accommodations to victims, (6) Columbia failed to meaningfully discipline students found to have committed sexual misconduct, and (7) Columbia threatened campus activists with suspension or expulsion for handing out flyers advocating for stricter sexual misconduct policies. (Compl. ¶¶ 8, 15.)  Moreover, Plaintiff alleges that Columbia's intentional violations of Title IX and general indifference to sexual misconduct on campus pre-dating Plaintiff's sexual assaults were a proximate cause of her injuries.  (Complaint ¶¶ 77, 78.)

For the independent reason alone that Defendant has failed to challenge Plaintiff's cause of action for Title IX liability arising out of Defendant's pre-assault conduct, Plaintiff's pre-assault Title IX claim must survive.  Nevertheless, if Defendant chooses to raise this issue on reply, when taken as true, Plaintiff's allegations raise a question of fact as to whether Columbia's conduct pre-dating Plaintiff's assaults amounted to an intentional violation of Title IX or a general policy of

indifference to sexual misconduct on campus.  For these reasons, Defendant's Motion should be denied.

## VI.   PLAINTIFF HAS PLED VIABLE NEGLIGENCE AND GROSS NEGLIGENCE CAUSES OF ACTION

### A.   <u>As The Landlord of Hartley Hall, Columbia Owed Plaintiff A Duty to Take Reasonable Measures to Prevent Injury Resulting From Foreseeable Criminal Attacks</u>

A landlord:

> must act as a reasonable [person] in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk.  Under this standard, a landlord has a duty to maintain minimal security measures, related to a specific building itself, in the face of foreseeable criminal intrusion upon tenants.

*Miller v. State,* 62 N.Y.2d 506, 513 (1984) (citations and quotations omitted.)

> Besides foreseeing harm from a particular assailant, however, a landowner can be put on notice if past history of criminal activity indicates that a criminal incident is a significant, foreseeable possibility.  As a result, a college will have breached its duty if it fails to take minimal precautions to protect its students from the reasonably foreseeable acts of third persons.

*Nieswand v. Cornell University*, 692 F.Supp. 1464, 1467 (1988) (citations omitted.)

A landlord's breach of this responsibility gives rise to a claim by a plaintiff injured by the criminal conduct of a third party.  *See Jacqueline S. v. City of New York*, 81 N.Y.2d 288 (1993) (14 year old girl abducted and forcibly raped in apartment complex survived summary judgment when other rapes and violent crimes had occurred in the housing project complex, but the outer doors did not have locks); *Miller v. State*, 62 N.Y.2d 506 (university liable when student abducted by stranger at knife point from an unlocked laundry room of dormitory was raped in dorm room); *Burgos v. Aqueduct Realty Corp.*, 92 N.Y.2d 544 (1998) (plaintiff pushed into her apartment by two men as she exited her residence and was robbed and beaten was owed a duty by the landlord when building's outer doors had no locks.)  Columbia concedes that it owed this obligation as the

landlord responsible for Hartley Hall.[5]  (Motion at 24.)

Columbia argues that "[s]ince even a fully secured entrance would not keep out another tenant, or someone allowed into the building by another tenant, plaintiff can recover only if the assailant was an intruder."[6]  (Motion at 24, citing *Burgos*, 92 N.Y.2d at 550-551.)  Thus, Columbia claims that this duty does not extend to an assault by another student.  Even accepting Columbia's premise – that the assailant must be an intruder - as true, its argument fails under the facts of this case.[7]  Even a student with access to the building has no right to access the private, common area of Plaintiff's suite.  Thus, a student who enters the suite is an intruder in that area.  Plaintiff has clearly alleged that if Columbia had taken reasonable steps it could have kept the assailant out of Plaintiff's suite.  Liability is appropriate here.

While there was an outer door to Plaintiff's suite, it was not equipped with a lock.  (Compl. at ¶¶ 28, 60-63.)  Both rapes were accomplished after the assailant gained access to the suite through the unlocked (and unlockable) outer door.  Even if the assailant possessed a key card and could have entered Hartley Hall, he was an intruder into Plaintiff's suite and could not have successfully entered the suite if Columbia had taken the reasonable precaution of equipping the outer door with a lock.  Indeed, after Plaintiff was sexually assaulted a second time Columbia did install a lock on her outer suite door.  (Compl. at ¶¶ 60-63.)  This case is particularly similar to *Miller* – which found the landlord owed a duty to the plaintiff.  In both the second assault in this

---

[5] Defendant cites *Pasquaretto v. Long Island University*, 964 N.Y.S.2d 599, 601 (2013), for the proposition that universities have no duty to protect against one student harming another.  (Motion at 24.)  But *Pasquereto* never discussed landlord liability and the injury at issues in that case did not occur in a building for which the university served as landlord.  The case is inapposite.

[6] Columbia does not claim that the assaults were unforeseeable.  Given that the first assault occurred and was reported to several different branches of Columbia before the second assault, such an argument would be fruitless.  Additionally, because other crimes occurring on the premises are relevant to determining the foreseeable of a criminal assault, this argument is inappropriate for a pre-discovery pleading challenge.

[7] Defendant cites *Williams v. Utica College of Syracuse University*, 453 F.3d 112 (2006), and *Walton v. Mercy College*, 940 N.Y.S.2d 54 (2012), but both of those cases involved a motion for summary judgment rather than a pleading challenge.

case and in *Miller*, the victim was initially attacked in an unlocked area inside the dormitory and then sexually assaulted in a dorm room.

   B.   <u>By Taking No Action to Prevent Additional Assaults of Plaintiff – Even After It Had
        Knowledge of the First Rape – Columbia Acted With Gross Negligence</u>

   "[A] party is grossly negligent when it fails to exercise even slight care or slight diligence." *Ryan v. IM Kapco, Inc.*, 930 N.Y.S.2d 627, 629 (2011). Columbia's conduct clearly falls into this category. Columbia was repeatedly notified that Plaintiff had been raped in her dorm room. (Compl. at ¶¶ 30-46.) Rather than taking any action to prevent future assaults, Plaintiff was denied medical services (Compl. at ¶¶ 30-31), belittled (Compl. at ¶ 32 [instructed that she "shouldn't have such rough sex again]); effectively denied the opportunity to change dorm locations (Compl. at ¶¶ 45-45); and was never instructed regarding Title IX compliant resources. (Compl. at ¶¶ 30-46.) As the landlord, it was also plainly aware that the outer door of Plaintiff's suite had no locking mechanism –leaving Plaintiff vulnerable to further attacks. (Compl. at ¶¶ 60-63.) Given Columbia's grossly negligent conduct, the assailant could, predictably, enter the common area of Plaintiff's suite and lie in wait for Plaintiff – which he did. (Compl. at ¶¶ 47-49, 60-63.) Plaintiff has effectively alleged landlord negligence, as discussed above. Additionally, taken in the light most favorable to the Plaintiff, a jury could clearly determine that Columbia acted with "reckless disregard" for the rights of Plaintiff and failed to exercise even slight care. The motion should be denied as to the gross negligence claim.

## VII.   CONCLUSION

   Defendant's Motion improperly asks this Court to weigh the merits of Plaintiff's allegations at the pleading stage. Both in its argument, and in the excessive amount of extrinsic evidence filed in support, Defendant effectively seeks to turn its motion to dismiss into a one-sided, motion for summary judgment. This Court should refuse to indulge Defendant's veiled

request.  As demonstrated above, Plaintiff has pled exceedingly sufficient allegations to plausibly support a finding of liability pursuant to Title IX and state negligence laws.  Given the disfavored nature of Rule 12(b)(6) motions to dismiss, especially in civil rights cases, this Court should deny Defendant's Motion in its entirety, and allow Plaintiff the opportunity to fully and fairly litigate her claims.[8]

By her Attorneys,

*/s/ ROBERT HANTMAN*
Robert Hantman (2066538)

Hantman & Associates
1120 Avenue of Americas 4th Fl.
New York, NY 10036
Tel: 212- 684-3933
Email: rhantman@hantmanlaw.com

*s/ ALEXANDER S. ZALKIN*
Alexander S. Zalkin, Esq. *[Pro Hac Vice]*
Irwin M. Zalkin, Esq. *[Pro Hac Vice]*
Ryan M. Cohen, Esq. *[Pro Hac Vice]*
The Zalkin Law Firm, P.C.
12555 High Bluff Drive, Ste 301
San Diego CA  92130
(858) 259-3011 / alex@zalkin.com
                              irwin@zalkin.com
                              ryan@zalkin.com

---

[8] In the event this Court is inclined to grant Defendant's Motion, Plaintiff respectfully requests that this Court do so with leave for Plaintiff to amend her Complaint.

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 19, 2017, I electronically filed the foregoing document with the

Clerk of the Court using the ECF system which will send notification of such filing to counsel of

record.

/s/ ALEXANDER S. ZALKIN
Alexander S. Zalkin, Esq. *[Pro Hac Vice]*
The Zalkin Law Firm, P.C.
12555 High Bluff Drive, Ste 301
San Diego CA  92130
(858) 259-3011 / alex@zalkin.com

24