UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMELIA ROSKIN-FRAZEE,<br><br>        Plaintiff,<br><br>  v.<br><br>COLUMBIA UNIVERSITY.<br><br>        Defendant. | No. 17-cv-2032 (GBD)<br><br>Oral Argument Requested |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

*Attorneys for The Trustees of Columbia
University in the City of New York*

## TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................................... ii

ARGUMENT ...............................................................................................................................1

I.     THE COURT MAY PROPERLY CONSIDER EXHIBITS 2–15 .......................................1

II.    PLAINTIFF FAILS TO STATE A TITLE IX CLAIM.......................................................3

      A.    Columbia's Actions Were Not "Clearly Unreasonable" .........................................3

      B.    Plaintiff's "Sexually Hostile Culture" Claim............................................................5

III.   PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED .................................9

CONCLUSION............................................................................................................................10

**Table of Authorities**

**Page(s)**

**CASES**

*Angilletta* v. *Mamaroneck Union Free Sch. Dist.*,
   No. 07 Civ. 0085, 2007 WL 1766774 (S.D.N.Y. May 10, 2007), *report and recommendation adopted as modified,* No. 07 Civ. 0085, 2007 WL 1760766 (S.D.N.Y. June 18, 2007) ................................................................................................ 2

*In re Arcapita Bank B.S.C.*,
   520 B.R. 15 (Bankr. S.D.N.Y. 2014) ........................................................................................ 5

*Blake* v. *Prudential Ins. Co. of Am.*,
   No. 14-cv-7042, 2016 WL 1301183, at *2 (S.D.N.Y. Mar. 31, 2016), *aff'd*,
   No. 16-1383, 2017 WL 1087885 (2d Cir. Mar. 21, 2017) ........................................................ 3

*Bond* v. *City of N.Y.*,
   No. 14-cv-2431, 2015 WL 5719706 (E.D.N.Y. Sept. 28, 2015) ............................................... 2

*Butters* v. *James Madison Univ.*,
   208 F. Supp. 3d 745 (W.D. Va. 2016) ...................................................................................... 5

*C.T.* v. *Liberal Sch. Dist.*,
   562 F. Supp. 2d 1324 (D. Kan. 2008) ....................................................................................... 7

*Chambers* v. *Time Warner*,
   282 F.3d 147 (2d Cir. 2002) ...................................................................................................... 2

*Cigotine LLC* v. *Bayonne*,
   No. 13 Civ. 06478, 2015 WL 585633 (S.D.N.Y. Feb. 6, 2015) ................................................ 3

*Cortec Indus., Inc.,* v. *Sum Holding LP*,
   949 F.2d 42 (2d Cir. 1991) ........................................................................................................ 2

*Davis* v. *Monroe Cnty. Bd. of Educ.*,
   526 U.S. 629 (1999) ............................................................................................................. 6, 8

*DiFolco* v. *MSNBC Cable L.L.C.*,
   622 F.3d 104 (2d Cir. 2010) ...................................................................................................... 2

*Doe 1* v. *Baylor Univ.*,
   16-cv-173, 2017 WL 1831996 (W.D. Tex. Mar. 7, 2017) ..................................................... 6, 9

*Facchetti* v. *Bridgewater Coll.*,
   175 F. Supp. 3d 627 (W.D. Va. 2016) ...................................................................................... 7

|  | **Page(s)** |
|---|---|

*Gebser* v. *Lago Vista Indep. Sch. Dist.*,
   524 U.S. 274 (1998) ................................................................................................................6

*Hyman* v. *Cornell Univ.*,
   834 F. Supp. 2d 77 (N.D.N.Y. 2011), *aff'd*, 485 F. App'x 465 (2d Cir. 2012) ........................2

*Karasek* v. *Regents of the Univ. of Cal.*,
   No. 15-cv-03717, 2015 WL 8527338 (N.D. Cal. Dec. 11, 2015).........................................7, 8

*Leader* v. *Harvard Univ. Bd. of Overseers*,
   No. 16-cv-10254, 2017 WL 1064160 (D. Mass. Mar. 17, 2017) .............................................2

*Miller* v. *State*,
   62 N.Y.2d 506 (1984) ........................................................................................................9, 10

*Moore* v. *Regents of the Univ. of Cal.*,
   No. 15-cv-05779, 2016 WL 4917103 (N.D. Cal. Sept. 15, 2016).........................................5, 7

*Munno* v. *Town of Orangetown*,
   391 F. Supp. 2d 263 (S.D.N.Y. 2005).......................................................................................2

*United States* v. *Real Prop. Known as Unit 5B of the Onyx Chelsea Condo.*,
   No. 10 Civ. 5390, 2011 WL 4151775 (S.D.N.Y. Aug. 26, 2011) ............................................3

*Rivers* v. *Towers, Perrin, Forster & Crosby, Inc.*,
   No. 07-cv-5441, 2009 WL 817852 (E.D.N.Y. Mar. 27, 2009).................................................9

*Rothman* v. *Gregor*,
   220 F.3d 81 (2d Cir. 2000).......................................................................................................2

*Simpson* v. *Univ. of Colo. Boulder*,
   500 F.3d 1170 (10th Cir. 2007) ................................................................................................6

*Tubbs* v. *Stony Brook Univ.*,
   No. 15 Civ. 0517, 2016 WL 8650463 (S.D.N.Y. Mar. 4, 2016) ..................................1, 2, 6, 8

*Williams* v. *Bd. of Regents of Univ. Sys. of Ga.*,
   477 F.3d 1282 (11th Cir. 2007) ................................................................................................9

*Yacubian v. United States*,
   750 F.3d 100 (1st Cir. 2014)....................................................................................................2

As Plaintiff's opposition confirms, the core question posed by this case is whether a university has a duty to investigate and apprehend an alleged assailant when the alleged victim does not report the incident for ten months after it allegedly happened, adamantly insists that she does not want the university to investigate, and cannot describe with any specificity her alleged assailant.  We respectfully submit that neither Title IX nor negligence law imposes any such duty.  Indeed the weakness of Plaintiff's position is perhaps best illustrated by the fact that if Columbia had immediately insisted on conducting an investigation against Plaintiff's wishes, it is almost certain she would instead have sued the University for doing so based on the very same claims that she now asserts here.

## ARGUMENT

### I. THE COURT MAY PROPERLY CONSIDER EXHIBITS 2–15

Defendant's moving brief established that the Court may consider a document outside the Complaint in deciding this motion if it is incorporated by reference into the complaint or if it is otherwise clear that Plaintiff relied on the document in preparing her Complaint.  (Moving Br. at 13.)  Indeed, Plaintiff concedes that one of the Exhibits to the Declaration of Roberta A. Kaplan (ECF No. 27), Exhibit 1, is incorporated by reference in her Complaint.  (Opp. at 9 n.2.)

Relying primarily on *Tubbs* v. *Stony Brook University*, No. 15 Civ. 0517, 2016 WL 8650463 (S.D.N.Y. Mar. 4, 2016) (Opp. at 5–9), Plaintiff argues against consideration of the remaining Exhibits (Exhibits 2–15).  The reasoning in *Tubbs*, however, has no application to the specific documents at issue here.  In *Tubbs,* the court identified three categories of documents that it declined to consider on a motion to dismiss:  (1) documents of which plaintiff did not have knowledge or notice, including emails and calendar invites sent internally within the university; (2) documents that post-dated the complaint; and (3) documents on which allegations in the complaint did not rely.  2016 WL 8650463, at *5–6.  No such documents are at issue here.

Instead, in stark contrast to *Tubbs*, Exhibits 2–15 include contemporaneous records of the exact same communications expressly referenced by Plaintiff and relied on by her in the Complaint.[1] Moreover, here, Plaintiff relies not only on the fact that these communications took place, but also on the actual substance of what was said. Thus, these communications—unlike the documents in *Tubbs*—are precisely the sort of documents that the Second Circuit has said can properly be considered on a motion to dismiss. *See, e.g., Chambers* v. *Time Warner*, 282 F.3d 147, 153 (2d Cir. 2002); *Rothman* v. *Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Cortec Indus., Inc.,* v. *Sum Holding LP*, 949 F.2d 42, 48 (2d Cir. 1991); *see also Angilletta* v. *Mamaroneck Union Free Sch. Dist.*, No. 07 Civ. 0085, 2007 WL 1766774, at *8 (S.D.N.Y. May 10, 2007), *report and recommendation adopted as modified,* No. 07 Civ. 0085, 2007 WL 1760766 (S.D.N.Y. June 18, 2007) (proper to consider report detailing sexual harassment investigation in Title IX action); *Leader* v. *Harvard Univ. Bd. of Overseers*, No. 16-cv-10254, 2017 WL 1064160, at *1 n.1 (D. Mass. Mar. 17, 2017) (same); *Munno* v. *Town of Orangetown*, 391 F. Supp. 2d 263, 269 (S.D.N.Y. 2005) (proper to consider underlying disciplinary charges); *Hyman* v. *Cornell Univ.*, 834 F. Supp. 2d 77, 81 (N.D.N.Y. 2011), *aff'd*, 485 F. App'x 465 (2d Cir. 2012) (proper to consider emails incorporated by reference in complaint alleging Title IX violation).[2]

       Consideration of these documents is especially appropriate here given that Plaintiff does not—and cannot—dispute the factual accuracy of any of the documents, and that the documents flatly contradict the allegations in her Complaint. *Cf. Yacubian* v. *United States*, 750 F.3d 100,

---

[1] The proffer by Plaintiff's counsel in her legal brief, unsupported by any sworn affidavit from Plaintiff, is legally insufficient to establish that she did not rely on any of these Exhibits in preparing her Complaint. *See Bond* v. *City of N.Y.*, No. 14-cv-2431, 2015 WL 5719706, at *5 (E.D.N.Y. Sept. 28, 2015) (holding that plaintiff's unsworn proffer, in its legal memorandum, had to be disregarded on a motion to dismiss).

[2] Moreover, it appears that *Tubbs* improperly conflates the legal standard, requiring—even for documents incorporated by reference in the complaint—that plaintiff "relied heavily on their terms and effects in drafting[] the Complaint." 2016 WL 8650463, at *6; *see DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (holding that the "relies heavily upon its terms and effect" standard applies only to documents *not* incorporated by reference).

108 (1st Cir. 2014); *Blake* v. *Prudential Ins. Co. of Am.*, No. 14-cv-7042, 2016 WL 1301183, at *2 (S.D.N.Y. Mar. 31, 2016), *aff'd*, No. 16-1383, 2017 WL 1087885 (2d Cir. Mar. 21, 2017) (summary order).

Although Plaintiff's separately filed "Objection to Defendant's Application of the Incorporation by Reference Doctrine" (ECF No. 32) contains various evidentiary objections to each of these documents, such objections are clearly improper in this context. *See, e.g., United States* v. *Real Prop. Known as Unit 5B of the Onyx Chelsea Condo.*, No. 10 Civ. 5390, 2011 WL 4151775, at *8 (S.D.N.Y. Aug. 26, 2011), *report and recommendation rejected on other grounds*, No. 10 Civ. 5390, 2011 WL 4359924 (S.D.N.Y. Sept. 19, 2011) (Daniels, J.) ("a court is permitted to consider materials that would be inadmissible under the Federal Rules of Evidence when deciding a motion to dismiss"). Moreover, Plaintiff's separate "Objection" obviously constitutes an improper attempt to circumvent Your Honor's Individual Rules, which expressly limit opposition papers to 25 pages. *See* Individual Rule III.B. That fact independently militates in favor of granting Columbia's motion. *See Cigotine LLC* v. *Bayonne*, No. 13 Civ. 06478, 2015 WL 585633, at *1 (S.D.N.Y. Feb. 6, 2015) (Daniels, J.) ("While noncompliance with local rules is not dispositive, it weighs in favor of denying Plaintiffs' motion." (internal citation omitted)).

## II. PLAINTIFF FAILS TO STATE A TITLE IX CLAIM

### A. Columbia's Actions Were Not "Clearly Unreasonable"

Columbia's moving brief established that Plaintiff fails to state a claim under Title IX because she does not plausibly allege that the timing of Columbia's response, or the accommodations it provided, were "clearly unreasonable" under the circumstances. (Moving Br. at 16–22.) In response, Plaintiff does not dispute that: (1) prior to August 2016, she did not wish to report any of the underlying incidents to the University; (2) as late as January 19, 2016 (after

3

both alleged rapes had already occurred), Plaintiff informed the University that she did not wish to report her alleged sexual assaults or commence an investigation; (3) the University is not required to investigate and respond to a report of sexual misconduct where "the victim explicitly requests that no investigation take place" (*see* Compl. ¶ 22); (4) when she changed her mind and reported the underlying incidents in August 2016, Columbia promptly responded and commenced an investigation; and (5) she has failed to identify any accommodation that she requested that the University failed to provide. (Moving Br. at 16–22.) For the reasons set forth in Columbia's moving brief, these concessions are fatal to Plaintiff's Title IX claim.

In other words, there is no plausible basis for Plaintiff's theory that it was "clearly unreasonable" under the circumstances for Columbia not to have investigated the underlying incidents prior to when she actually reported them in August 2016, considering that Plaintiff concedes that there is no obligation for the University to investigate where, as here, a student specifically insists that she does not want the University to do so. Similarly, there is no plausible basis for Plaintiff's theory that the accommodations provided by Columbia were "clearly unreasonable" given that Plaintiff fails to identify a single academic or housing accommodation that she requested but was not provided.

Having conceded these critical facts, Plaintiff's opposition boils down to a single argument—namely, that Columbia "was on actual notice of her first rape" as early as October 2015, at which point the University was obligated to "take action in response," notwithstanding that she specifically told the University not to do so. (Opp. at 12–13.) But the two conversations on which Plaintiff relies created no such obligation. With respect to the conversation with her academic advisor in October 2015, Plaintiff concedes in her opposition (as she also admits in her Complaint) that she never told her advisor that she had been raped. (Opp. at 12; Compl. ¶ 39.)

As for the conversation with Columbia's Executive Vice President for University Life in December 2015, Plaintiff does not dispute that because that conversation took place "in the context of a student advocacy forum" (Opp. at 12), it triggered no affirmative obligation under Columbia's Policy to report the rape on Plaintiff's behalf or to commence an investigation (Moving Br. at 18–19; Ex. 1 at 11). Plaintiff asks the Court to ignore this specific exception in Columbia's Policy in favor of the general obligation to report gender-based misconduct. (Opp. at 12–13; Ex. 1 at 9.) But such a construction of the University's Policy would nullify the specific exception to the investigation mandate, and violate the black letter rule that a specific provision on an issue trumps a more general provision. *See In re Arcapita Bank B.S.C.*, 520 B.R. 15, 25 (Bankr. S.D.N.Y. 2014). Further, Plaintiff does not point to any Department of Education ("DOE") guidelines from which Columbia's conduct departed. (Opp. at 14–17.) Indeed, like Columbia's Policy, the DOE's Title IX guidelines specifically provide that a school is *not* "required to investigate information regarding sexual violence incidents shared by survivors during public awareness events."[3] (Moving Br. at 3.)

### B.     Plaintiff's "Sexually Hostile Culture" Claim

Plaintiff's first cause of action purports to bring a claim under Title IX based on a "sexually hostile culture." (Compl. ¶¶ 76–81.) But neither Title IX nor the cases applying it recognizes such a cause of action. Indeed, a search of all federal and state cases on Westlaw yields not a single decision in any court in which a party asserted a claim under Title IX based on a "sexually hostile culture," much less one in which the court actually upheld such a claim. Moreover, as pled in her Complaint, Plaintiff's "sexually hostile culture" cause of action—which

---

[3]  Even if Plaintiff could identify some violation of Columbia's Policy or DOE guidelines, that fact, alone, is not sufficient to state a claim under Title IX. *See, e.g., Moore* v. *Regents of the Univ. of Cal.*, No. 15-cv-05779, 2016 WL 7048991, at *2 (N.D. Cal. Dec. 5, 2016); *Butters* v. *James Madison Univ.*, 208 F. Supp. 3d 745, 757 (W.D. Va. 2016).

is expressly premised on the allegation that Columbia was "deliberately indifferent" (*id.* ¶ 77)—appears to be duplicative of her second cause of action under Title IX based on "deliberate indifference." (*Id.* ¶¶ 82–89.) Accordingly, it should be dismissed for the same reasons.

Presumably recognizing this problem, Plaintiff now seeks to re-style her "sexually hostile culture" cause of action as a claim that arose "pre-assault" based on a "general policy of indifference to sexual misconduct on campus." (Opp. at 17–20.) But none of the cases that Plaintiff cites for this re-styled claim can support her argument here. In particular, neither *Davis* v. *Monroe County Board of Education*, 526 U.S. 629 (1999) nor *Gebser* v. *Lago Vista Independent School District*, 524 U.S. 274 (1998) suggests that an educational institution may be liable under Title IX based on "pre-assault" conduct, and neither case addresses whether an educational institution may be liable under Title IX based on a "general policy of indifference to sexual misconduct on campus." (Opp. at 17–18.) And although a few courts have interpreted *Gebser*'s dicta to suggest that the "official policy of the recipient entity" may be sufficient to impose Title IX liability, *see Simpson* v. *Univ. of Colo. Boulder*, 500 F.3d 1170 (10th Cir. 2007); *Tubbs*, 2016 WL 8650463; *Doe 1* v. *Baylor Univ.*, No. 16-cv-173, 2017 WL 1831996 (W.D. Tex. Mar. 7, 2017), as discussed below, those cases have no application to the facts alleged here.

*Simpson*, for example, involved a specific "official school program"—a university-sanctioned and university-funded football recruiting program, without supervision, in which female students known as "ambassadors" were paired with male recruits and asked to show them a "good time." The plaintiff in *Simpson* alleged that this program had led to an environment in which sexual assault became more likely. *See* 500 F.3d at 1173, 1174. The *Simpson* court detailed a long history—over more than ten years—of sexual assaults and rapes specifically related to this "official school program." *Id.* at 1180–85. Based on those facts, the Tenth Circuit

overturned the grant of summary judgment dismissing plaintiff's Title IX claim. There is no allegation suggesting anything like such an "ambassador" program here.

Indeed, courts subsequently have interpreted *Simpson* as "confined to circumstances where a federal funding recipient sanctions a specific program that, without proper control, would encourage sexual harassment and abuse such that the need for training or guidance is obvious." *C.T.* v. *Liberal Sch. Dist.*, 562 F. Supp. 2d 1324, 1339 (D. Kan. 2008). Thus, even though the plaintiff in *C.T.* alleged that the school district had been aware "for decades" of the risk of sexual misconduct by teachers, had "specific knowledge about prior instances of sexual harassment in the school district," but had "failed to implement meaningful sexual harassment policies and adequately train its personnel," the court nevertheless found that those allegations did not necessarily impose Title IX liability. *Id.* at 1339–40.[4]

Similarly, in *Karasek* v. *Regents of the University of California*, No. 15-cv-03717, 2015 WL 8527338 (N.D. Cal. Dec. 11, 2015), the court declined to extend *Simpson*, which it described as involving a "specific context (football recruiting efforts) by a particular group of persons (football players and recruits)," because the plaintiffs in that case "d[id] not allege that the University had any specific knowledge of a heightened risk of sexual assault either by their particular assailants or in the particular contexts in which their assaults occurred." *Id.* at *9. Because the plaintiffs in *Karasek* instead relied on "general allegations regarding the University's alleged underreporting of sexually violent incidents," an audit report showing numerous instances of sexual assault on campus, and a "Title IX administrative complaint

---

[4]  Numerous other courts have declined to extend *Simpson* to apply to allegations of "a general policy of indifference to sexual misconduct on campus." (Opp. at 17.) *See, e.g., Moore*, 2016 WL 4917103, at *6 (differentiating the plaintiff's claim from that in *Simpson* because she "did not allege the university had any specific knowledge of a heightened risk of sexual assault either by John Doe or in the particular context in which Moore's assault occurred"); *Facchetti* v. *Bridgewater Coll.*, 175 F. Supp. 3d 627, 640 n. 9, 641 (W.D. Va. 2016) (dismissing claim despite five prior rapes in the college's dorms in the prior year and distinguishing *Simpson* because it involved allegations of university officials' "extensive knowledge" of prior rapes and harassment in the "context of the recruiting program").

7

alleging that the University has for many years failed to adequately respond to certain reports of sexual violence," such allegations were insufficient to state a Title IX claim. *See id.* at *9–10.

Plaintiff's allegations are obviously not related to any "official school program" of Columbia. Instead, as in *C.T.* and *Karasak*, Plaintiff's claim is based on the kind of general, campus-wide allegations of "a culture of sexual hostility and violence" (Compl. ¶ 77) that are generally considered to be insufficient to state a claim under Title IX. Indeed, if Plaintiff's theory that generalized knowledge of risk to female students were held to be enough to state a claim under Title IX, that would mean, as a practical matter, that almost any college or university of Columbia's size would be liable under Title IX unless it could somehow "purg[e]" its campus of "peer harassment," a proposition expressly considered and rejected by the Supreme Court in *Davis*. 526 U.S. at 648.

*Tubbs* is likewise inapposite. In that case, Judge Roman noted that "a school's inadequate response to the problem of sexual violence" can support a claim under Title IX only in "limited circumstances," and that such "pre-assault" claims are subject to a "heightened pleading standard." 2016 WL 8650463, at *7–9. The *Tubbs* court found that the plaintiff in that case satisfied this higher standard based on allegations that "OCR conducted an investigation of University Defendants' policies and procedures regarding sexual assault and concluded that many of them were deficient," and that although "SUNY agreed to remedy these deficiencies" in a Voluntary Resolution Agreement ("VRA"), it nevertheless "did not enact the changes agreed to in the VRA." *Id.* at *9. Again, this case presents no such facts. Although Plaintiff alleges that OCR is currently investigating Columbia (Compl. ¶ 18), she does not (and cannot) allege that OCR has reached any adverse conclusions concerning Columbia's policies and procedures, much less that Columbia agreed to make changes and failed to do so.

The decision in *Doe 1* is also distinguishable. In that case, the court found that Baylor University "created a heightened risk of sexual assault" by "repeatedly misinform[ing] victims of sexual assault as to their rights under Title IX," "fail[ing] to investigate reported sexual assaults," "discourag[ing] those who reported sexual assaults from naming their assailants or otherwise coming forward," and "despite being informed of multiple sexual assaults between 2008 and 2011," falsely reporting to the DOE "that no such assaults took place on its campus during that period." 2017 WL 1831996, at *8–9. Once again, Plaintiff does not (and cannot) make any such allegations against Columbia here.[5]

## III.  PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED[6]

Negligence. Columbia's moving brief established that Plaintiff's third cause of action—negligence based on alleged "fail[ure] to investigate Plaintiff's first rape" (Compl. ¶ 93)—should be dismissed for numerous reasons (Moving Br. at 23–24), none of which Plaintiff even addresses in her opposition. Plaintiff's failure to respond constitutes a waiver of this claim. *Rivers* v. *Towers, Perrin, Forster & Crosby, Inc.*, No. 07-cv-5441, 2009 WL 817852, at *11 (E.D.N.Y. Mar. 27, 2009) ("Given plaintiff's failure to respond to this deficiency in his opposition brief, the motion to dismiss is also granted on the independent ground of waiver.").

Premises Liability. Plaintiff's reliance on *Miller* v. *State*, 62 N.Y.2d 506 (N.Y. 1984), which she claims is "particularly similar" (Opp. at 21), is misplaced. In *Miller*, "[t]he assailant . . . was an intruder in the dormitory with no right or privilege to be present there," prior to the plaintiff's sexual assault there were widespread reports of nonresidents committing "numerous

---

[5]  Nor do the facts in *Williams* v. *Board of Regents of the University System of Georgia*, 477 F.3d 1282, 1290 (11th Cir. 2007), bear any resemblance to Plaintiff's claim here since the university officials in *Williams* were personally involved in recruiting one of the assailants "even though they knew he previously had disciplinary and criminal problems, particularly those involving harassment of women, at other colleges."

[6]  Plaintiff does not dispute that if this Court dismisses her Title IX claims, it should decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. (Moving Br. at 23 n.8.)

9

crimes" in the dormitories, and notwithstanding these reports, "the doors at all of the approximately 10 entrances to the dormitory building were concededly kept unlocked at all hours." *Id.* at 509. Based on these facts, the New York Court of Appeals found that the university "had a duty to take the *rather minimal* security measure of keeping the dormitory doors locked when it had notice of the likelihood of criminal intrusions." *Id.* at 514 (emphasis added). The facts in *Miller* bear no resemblance to the allegations here, since Plaintiff does not allege that her assailant was an outside intruder, does not allege reports of nonresidents committing numerous crimes in the dormitories, and concedes that the entrance to her dormitory was locked and required card key access at all times.

In response to the cases in Columbia's moving brief demonstrating that the University owed no independent duty to protect Plaintiff from another Columbia student (Moving Br. at 24–25), Plaintiff misstates the law. Specifically, Plaintiff suggests that, in addition to having key card access locks on the outside of Plaintiff's dormitory and locks on each and every dorm room (both of which security measures Plaintiff concedes Columbia had in place), Columbia also was obligated to have separate locks on each outer suite area within the dorm. (Opp. at 21.) But this proposition cannot be reconciled with the above-stated principle in *Miller* that a landlord has a duty to maintain only "minimal security measures." (*Id.* at 20 (quoting *Miller*, 62 N.Y.2d at 513).)

Gross Negligence. Plaintiff concedes that to state a claim for gross negligence, she must allege facts demonstrating that Columbia "'fail[ed] to exercise even slight care.'" (Opp. at 22.) She clearly has not done so here.

## CONCLUSION

For these reasons, and those set forth in Columbia's moving brief, the Court should dismiss the Complaint in its entirety, with prejudice.

Dated: June 26, 2017

        Respectfully submitted,

        PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

    By:      /s/ Roberta A. Kaplan

        Michele S. Hirshman
        Roberta A. Kaplan
        Darren W. Johnson

        1285 Avenue of the Americas
        New York, NY 10019-6064
        Main: 212.373.3000
        Fax: 212.757.3990
        mhirshman@paulweiss.com
        rkaplan@paulweiss.com
        djohnson@paulweiss.com

        *Attorneys for The Trustees of Columbia University in the City of New York*